Pamela JOHNSON, Plaintiff,

v.

UNIVERSITY SURGICAL GROUP
ASSOCIATES OF CINCINNATI,
et al., Defendants.

No. C–1–93–774.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 22, 1994.

Sharon Jo Sobers, Paul Henry Tobias, Tobias & Kraus, Cincinnati, OH, for plaintiff Pamela Johnson.

Brent Gregory Houk, Dinsmore & Shohl, Robert Alexander Pitcairn, Jr., Katz, Teller, Brant & Hild Co., Donald James Mooney, Jr., Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, for defendants University Surgical Group Associates of Cincinnati, Dr. William Graue.

Brent Gregory Houk, Dinsmore & Shohl, Robert Alexander Pitcairn, Jr., Katz, Teller, Brant & Hild Co., Cincinnati, OH, for defendants University Surgical Associates of Cincinnati, Dan J. Crocker, John R. Gillespie, John J. Finnegan, Gary S. Robins, Frederick L. Steinbeck.

Brent Gregory Houk, Dinsmore & Shohl, Cincinnati, OH, for defendant Dr. Josef Fischer, individually and as sole shareholder, owner, & mgr. of USGC, USAC, and University Surgical–Dental Assoc. of Cincinnati.

Robert Alexander Pitcairn, Jr., Katz, Teller, Brant & Hild Co., Cincinnati, OH, for defendant University Oral & Maxillofacial Surgery Associates.

### ORDER DENYING DEFENDANT GRAUE'S MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court for consideration of the Motion to Dismiss of numerous Defendants (doc. 6), Defendant Dr. Graue's Motion to Dismiss (doc. 20), which is opposed by the Plaintiff (doc. 22), and to which the Doctor has replied (doc. 23). Doctor Graue has also provided the Court with Supplemental Memoranda (doc. 24 & 26), each calling the Court's attention to further authorities in support of the Defendant's motion. Upon the filing of the Plaintiff's Amended Complaint, Dr. Graue has renewed his Motion to Dismiss (doc. 29).

### BACKGROUND

The Plaintiff, Ms. Pamela S. Johnson was a dental assistant for Dr. William Graue. She claims that she was sexually harassed on the job by Dr. Graue, and that when she complained she was terminated in retaliation. The Plaintiff also contends that the harassment and retaliation have caused her emotional injuries. She brings these claims under Title VII as well as under Ohio Revised Code § 4112.02(A) and Ohio common law.

As we noted earlier in our order granting her Motion to Amend her Complaint, the Plaintiff was having some difficulty discovering the structure of the medical practice for which she worked and precisely who were the appropriate Defendants. As a result we granted the Plaintiff's Motion to Amend her Complaint over the objection of the Defendants. In responding to Dr. Graue's Motion to Dismiss, the Plaintiff alleges that Dr. Graue was her supervisor. The Plaintiff states that "Dr. Graue was acting as an agent of Defendant employer[ ] when he hired, evaluated, disciplined, retaliated against and worked for Plaintiff's discharge." Plaintiff's Memorandum in Opposition, at 10–11, Document 22. In addition the Plaintiff asserts a belief "that Dr. Graue is liable apart from the liability created from the alleged harassment and retaliation because he and the other named Defendants collectively are Defendant USDA and because of the nature of their relationship [to] USAC." Id.

### STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be grant-

ed under Fed.R.Civ.P. 12(b)(6) must be viewed in the light most favorable to the party opposing the motion. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983). The court must accept as true all allegations in the well pleaded complaint under attack. *Id.* The court may grant the motion only "if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Balderaz v. Porter*, 578 F.Supp. 1491, 1494 (S.D.Ohio 1983).

### A. ORIGINAL MOTION TO DISMISS (DOC. 6)

Soon after the Complaint was filed certain Defendants moved for dismissal on the grounds that the Complaint failed to state claims against them. At the time we granted the Plaintiff's Motion to Amend, we indicated that this Court's preferred method of dealing with the situation was to grant leave to amend, and then to allow the Defendants to attack the amended complaint. Since the Defendants' original Motion to Dismiss (doc. 6) attacking the original complaint is now moot, we must deny that motion, but grant the moving Defendants leave to refile their motion, now that the Plaintiff has amended her complaint.

### B. DR. GRAUE'S MOTION TO DISMISS

Dr. Graue's Motion to Dismiss is based on a single argument. Dr. Graue contends that he cannot be held personally liable under Title VII or under Ohio Revised Code Chapter 4112 because these statutes do not allow for personal liability for employees. Finally, Dr. Graue argues that since the federal claims for harassment and wrongful discharge should be dismissed, then the Plaintiff's state claims should be dismissed for want of federal jurisdiction.

■ Having reviewed the law in the Sixth Circuit, we find that a co-employee supervisor may be personally liable for acts of intentional discrimination under Title VII, provided that their individual liability is based on their own independent acts and not merely for acts in compliance with policies set forth by their superiors.

■ In addition, Dr. Graue would be directly liable under Title VII and Chapter 4112, as an employer, as opposed to as an agent, if we accept the Plaintiff's allegation that Dr. Graue has an ownership role in USAC, and that USAC was the Plaintiff's employer. Furthermore, we are not persuaded that a co-employee supervisor is not personally liable under Ohio Sex Discrimination Statutes. Finally, we believe that we should retain jurisdiction over the Ohio sex discrimination and retaliation claims and the common law emotional distress claims under our supplemental jurisdiction, as these claims "are so related to [the] claims in the action within [our] original jurisdiction that they form part of the same case or controversy...." *See* 28 U.S.C. § 1367(a); *Shrout v. Black Clawson*, 689 F.Supp. 774, 781–82 (S.D.Ohio 1988).

### 1. CO–EMPLOYEE SUPERVISOR LIABILITY UNDER TITLE VII

■ It appears that the Sixth Circuit has not squarely considered the issue of individual liability under Title VII. The Defendant cites emerging law in other circuits, as well as, district courts in this circuit, to support his position. However, we are required to look to the Sixth Circuit Court of Appeals and the United States Supreme Court for binding precedent. Neither has spoken definitively on the question of individual liability under Title VII. Moreover, having studied the prior holdings of our parent courts, as well as the language of the statute, we are persuaded that the Defendant is incorrect in his assertion that Title VII does not impose individual liability on a co-employee supervisor. Therefore, we decline to dismiss the Plaintiff's Title VII claim against Dr. Graue in his individual capacity.

Dr. Graue argues that liability is limited under Title VII to employers. The statute forbids intentional discrimination in this way:

§ 2000e–2. Unlawful employment practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of ... sex ...

42 U.S.C. § 2000e–2. The dispute arises over Title VII's definition of an "employer." The statute states that:

(b) The term "Employer" means a person engaged in an industry affecting commerce who has fifteen or more employees ... and any *agent* of such a person....

42 U.S.C. § 2000e (emphasis added). From the plain language of the statute it would seem that an agent of the employer is personally and individually liable for discriminatory acts. However, Dr. Graue bases his argument against individual liability on the holdings of various circuit and district courts.

The most popular argument for the Defendant's position is presented by the Ninth Circuit Court of Appeals.[1] In *Miller v. Maxwell's International, Inc., et al.,* 991 F.2d 583 (9th Cir.1993), the Ninth Circuit squarely addresses the issue of individual liability under Title VII. The district court had analyzed the statutory language and concluded as we do that the text of the statute did not preclude individual liability. *Id.* at 587. The Ninth Circuit acknowledged the merits of this statutory construction but proceeded with its own analysis.

That analysis begins with a study of the limits placed on employer liability under the statute.

> The statutory scheme itself indicates that Congress did not intend to impose individual liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b) ... in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Id.* The *Miller* court also relied on precedents in the Ninth Circuit which held that "individual defendants could not be held liable for back pay." *See Padway v. Palches,* 665 F.2d 965, 968 (9th Cir.1982). The *Padway* court had found it significant that Title VII (at that time) allowed only for injunctive relief, including back pay. *Id.* Dr. Graue argues that a co-employee supervisor, such as himself[2] is not in the position to be able to grant reinstatement or back pay, and therefore should not be liable under Title VII.

---

**1.** The Defendant also provides citations to other circuits which have held that an employee cannot be held individually liable under Title VII. *See Grant v. Lone Star Company, et al.,* 21 F.3d 649, 652 (5th Cir.1994) ("the purpose of the "agent" provision in § 2000e(b) was to incorporate respondeat superior liability into title VII"); *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir.1994) ("liability under 42 U.S.C. § 2000e(b) can attach only to employers"); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) ("individual capacity suits are inappropriate"); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (same); *See also Lowry v. Clark,* 843 F.Supp. 228, 229–30 (E.D.Ky.1994) (following *Miller* ).

On the other hand a significant number of district courts have concurred with this Court by specifically considering and rejecting the *Miller* analysis. *See Lamirande v. Resolution Trust Corp., et al.,* 834 F.Supp. 526, 528–29 (D.N.H. 1993) (providing a thorough analysis based, among other arguments, on Congressional intent); *Vakharia v. Swedish Covenant Hosp., et al.,* 824 F.Supp. 769, 784–85 (N.D.Ill.1993) ("deci-

sion making employees who discriminate ... may be held liable in their individual capacities ..."); *Strzelecki v. Schwarz Paper Co., et al.,* 824 F.Supp. 821, 829 n. 3 (N.D.Ill.1993) ("The ADEA is designed not only to compensate victims of discrimination but to deter potential discriminators, and the latter goal is undermined when people who make discriminatory decisions do not have to pay for them."); *Miller v. Cabletron Systems et al.,* No. C–929182–L, 1994 WL 258649 at *5 (D.N.H. February 5, 1994) (individual liability under Title VII); *U.S. Equal Employment Opportunity Commission v. AIC Security Investigations, LTD., et al.,* No. 92 C 7330, 1993 WL 427454 (N.D.Ill. October 21, 1993) ("if the person most responsible for invidious discriminatory actions (that is, the employee who actually discriminates) were shielded from personal liability, that person may never be sufficiently punished or deterred.").

**2.** We note that it is disputed whether Dr. Graue was a part owner of the dental group or was in fact in a position to cause the Plaintiff's termination or reinstatement.

The problem with the Defendant's back pay argument is that under the Civil Rights Act of 1991, a plaintiff is not limited to reinstatement or back pay, but can recover compensatory and punitive damages for intentional discrimination. *See* 42 U.S.C. § 1981(a). Thus it could be argued that the 1991 amendments open the door for individual liability. The *Miller* court addressed this argument also:

> [I]n drafting [Section 1981(a)], Congress specifically limited the damages available depending upon the size of the respondent *employer. See* [Section 1981a(b)(3)(A)–(D)]. ... [W]e think that if Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in this litany of limitations, and would have discontinued the exemption for small employers ....

*Miller,* 991 F.2d at 587–88, n. 2.

Judge Higgins in the Middle District of Tennessee has undertaken a careful and exhaustive review of the current state of the law in the Sixth Circuit and beyond. *Wilson et al. v. Wayne County, et al.,* 856 F.Supp. 1254, 1261–63 (M.D.Tenn.1994). Judge Higgins agrees that the Sixth Circuit has not directly addressed the issue. *Id.* at 1261. He finds the arguments propounded by the Defendants in the instant case and the courts cited above to be "questionable." *Id.* at 1264. However, he concludes:

> [T]his Court cannot ignore what is obvious. The greatest weight of recent legal authority, including the holdings of the courts of appeals of other circuits, other district courts in this circuit, and even other judges within this district, does not recognize individual liability for Title VII violations. Without a clear statement to the contrary from the United States Court of Appeals for the Sixth Circuit or the United States Supreme Court, this Court concludes that Title VII does not permit suits against individual defendants in their "individual capacities."

*Id.* at 1264–1265.

We decline to follow this course. We agree with Judge Higgins that the Sixth Circuit has not yet squarely faced this question. However, our analysis of the holdings of our parent court reveals that, in those instances where the Sixth Circuit has spoken, they appear to approve of individual liability under Title VII. In addition, it has been our own policy to allow individual capacity suits under the anti-discrimination statutes. *See Mathis–Seiter v. Trans Mart Inc., et al.,* C–1–93–575 (S.D.Ohio 1994) (suit under Title VII against corporation, owner, and supervisor); *Crihfield v. Monsanto, et al.,* 844 F.Supp. 371 (S.D.Ohio 1994) (suit under Title VII against company and a supervisor who allegedly exposed himself to and fondled his subordinate); *Mann v. University of Cincinnati, et al.,* (suit under Title IX against teachers as well as the university); *Cameron v. Hillsboro Board of Education, et al.,* (S.D.Ohio 1992) (school board and superintendent). Other district courts in this circuit have followed the same policy. *See Bell v. St. Regis Paper Company,* 425 F.Supp. 1126 (N.D.Ohio 1976) (suit against company and supervisors); *Munford v. James T. Barnes & Co.,* 441 F.Supp. 459, 466 (E.D.Mich.1977) (holding that plaintiff's allegations "stated a good cause of action under Title VII against all three defendants [company and two supervisors]"); *Compston v. Borden, Inc.,* 424 F.Supp. 157, 162 (S.D.Ohio, 1976) (awarding damages against supervisors individually); *Robson v. Eva's Super Market, Inc.,* 538 F.Supp. 857, 862 (N.D.Ohio 1982) (holding for supervisor liability).

Recognizing that there is a split in the circuits in this matter, and having cited above the circuit courts cases which oppose individual liability, we note that other circuit courts have upheld individual liability. *See Zaken v. Boerer,* 964 F.2d 1319 (2nd Cir. 1992) (court discusses admissibility of evidence against defendant "in her individual capacity") *cert. denied,* —— U.S. ——, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992); *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir. 1989) (holding plaintiff may pursue sexual harassment claims against her supervisor); *Hamilton v. Rodgers,* 791 F.2d 439 (5th Cir. 1986) (extending liability to supervisors who participated in decision making) *limited by Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990); *Steele v. Offshore Shipbuilding,*

*Inc.*, 867 F.2d 1311, 1316, n. 1 (11th Cir.1989) ("[A]n agent of the corporate employer, is *directly* liable for his actions that violate Title VII. Likewise, the corporate employer would be *directly* liable for [the agent's] actions taken within the scope of their agency." emphasis in original); *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992) ("Cases in this circuit ... appear to assume both individual and official liability can be imposed under Title VII").

Our analysis of Supreme Court and Sixth Circuit cases is, in the end inconclusive on the precise issue of individual liability, but the Plaintiff presents a credible argument based on the existing cases, which approve of the practice either tacitly or in dicta. Based on the current state of the law in this circuit, we are reluctant to deprive the Plaintiff of her day in court.

The Plaintiff first argues that the plain language of the definitions section of the statute attributes Title VII liability to an agent of the employer. *See* 42 U.S.C. § 2000e(b) (ascribing liability to "a person engaged in industry ... and any agent of such a person"). Then the Plaintiff offers numerous citations to Sixth Circuit cases which discuss agent liability. Typical of these citations is the following:

> Generally, an agent of an employer who may be sued as an employer in Title VII suits has been construed to be a supervisory or managerial employee to whom employment decisions have been delegated by the employer.

*York v. Tennessee Crushed Stone*, 684 F.2d 360, 362 (6th Cir.1982). However, a closer examination of that case indicates that it does not stand for the proposition that an agent may be sue as an individual, but rather that the individual accused of discrimination "could be sued in his official capacity as executive director, i.e. agent, of the association." *Id.*

The Sixth Circuit has made stronger assertions concerning the liability of individuals under Title VII. In *Jones v. Continental Corp., et al.* the Court of Appeals stated:

> [T]he law is clear that individuals may be held liable for violations of § 1981, ... and as "agents" of an employer under Title VII.... Since the individual employees sued were at least arguably "agents" of the employer, we think it obvious that Jones's counsel were intentionally and properly seeking recovery against the individuals under both statutes.

*Jones v. Continental Corp. et al.*, 789 F.2d 1225, 1231 (6th Cir.1986). The Defendant correctly points out that this statement by the Court of Appeals is dicta and not the central point of the case. However, they provide no corresponding statements of the Sixth Circuit, dicta or otherwise, which deny individual liability. As noted above, the Defendant relies principally on precedent from the other circuits and from two district courts within this circuit.

The Plaintiff offers one final Sixth Circuit case in which the court allowed recovery against individuals, jointly and severally for discrimination based on sex. In *Romain v. Kurek*, a per curiam court tacitly affirmed a district court award of damages against individuals. The plaintiff had sued her employer, the White Horse Inn, as well as certain individuals. The district court entered a default judgment finding all of the defendants "jointly and severally liable" and determining the amount of damages and attorney fees which plaintiff was to recover. *Romain v. Kurek*, 772 F.2d 281, 282 (6th Cir.1985). After the default was entered, the district court set aside the judgment against one defendant, on the basis that he was not named in the original EEOC charge, and therefore was not liable. The court of appeals reversed the district court's grant of summary judgment for that defendant and remanded the defendant for trial on the question of whether there was an identity of interest between that defendant and the defendant named in the EEOC charge sufficient to overcome the failure to name the party in the EEOC charge. *Id.* In remanding the individual defendant for trial the court of appeals did not address individual capacity as a problem. Thus, by approving the award of joint and several liability below, the Sixth Circuit tacitly approved individual liability under Title VII.

■ Although we believe that the decisions of the Sixth Circuit favor individual liability, at least tacitly, we recognize that such guidance in not definitive. Therefore, we must undertake our own analysis of the individual liability question. We begin with the language of the statute itself, which we have previously noted ascribes liability to employers and agents of employers. *See* 42 U.S.C. 2000e(b). Next we look to the express intent of Congress, for if Congress has spoken, a court must give effect to the unambiguously expressed intent of Congress. *Norfolk and Western v. American Train Dispatchers Ass'n,* 499 U.S. 117, 128, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991). In 1991 Congress amended the antidiscrimination statutes, adding among other things liability for compensatory and punitive damages. Civil Rights Act of 1991, PL 102–166, § 1977A(a)(1). In the amendment Congress clearly stated that the purpose of the Act was "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace; ...." *Id.* at § 3(1).

■ The Supreme Court had previously expressed a complementary interpretation of the purposes of Title VII in the context of gender discrimination:

Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult.

\* \* \* \* \* \*

[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment.

*Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). One purpose, then, of Title VII is to provide remedies for the intentional creation of a hostile or abusive working environment. If we now examine *Kauffman,* the leading Sixth Circuit case in the area of hostile working environment, it is clear how the exclusion of individual liability for a co-worker supervisor can subvert the stated purpose of Title VII.

The court in *Kauffman* provides us with a brief statement of the facts. Lucille R. Kauffman had worked for Allied Signal for a decade when the relevant events occurred.

In early 1988, Kauffman took medical leave to have breast enlargement surgery in order to enhance her looks and self-esteem. Kauffman considered this a very private matter and told only a few very close friends, including co-workers, about her surgery, in confidence. Kauffman did not tell Butts [her co-employee supervisor] about her surgery. However, when Kauffman returned to work on April 11, 1998, Butts came up behind her machine, touched her left breast, and stated to Kauffman, "you didn't tell me you were going on medical leave. Why didn't you tell me you were getting new tits? When do I get to see them?" Butts also tried to look down Kauffman's shirt, while Kauffman immediately pushed him away and said "That's enough Don."

*Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 180 (6th Cir.1992). The next day Butts took Kauffman off her regular machine and assigned to a manual press, which one employee described as "torture" to operate. *Id.* When asked if there was something wrong with Kauffman's regular machine, Butts responded, "No, there's nothing wrong with her machine, I put her on 108 for punishment because she wouldn't show me her tits." *Id.* Butts instructed one worker to ask Kauffman, "to show you her tits." The worker asked, but apologized when Kauffman started crying. *Id.* at 181. During the three days after her return to work, Kauffman alleges that she was approached by twenty other co-workers who made comments about her surgery. *Id.*

Ms. Kauffman complained and Butts was fired.[3] Subsequently, she suffered a nervous breakdown, which her psychiatrist testified is a result of the sexual harassment at Allied Signal. *Id.* She sued her employer, but not

---

3. Actually, Butts had been employed by Allied for some twenty years before his retirement. Subsequently, he was rehired as a temporary full-time employee through Rumpf Corporation, a temporary employment service. There is no evidence that Butts retirement status or his employment with Rumpf were adversely affected by his treatment of Ms. Kauffman.

her supervisor, Mr. Butts. The Sixth Circuit determined that Butts was an agent within the meaning of Title VII. *Id.* at 184–85. However, the Sixth Circuit affirmed the district court's dismissal of her hostile environment claim because "Allied Signal was protected from liability because its response upon learning of Butts's harassment was adequate and effective." *Id.* at 185.

It cannot be disputed that Ms. Kauffman experienced on the job sexual harassment. She has a credible argument for damages. However, she has no claim for recovery, at least under the hostile environment theory. The Sixth Circuit left open the possibility that she might recover under a *quid pro quo* theory, but in the same breath discouraged that theory, suggesting that the job detriment she suffered may well be *de minimis.* If Ms. Kauffman cannot recover individually from her supervisor, Butts, then she has no recovery under Title VII. However, denial of such recovery seems contrary to the purposes for which Congress created Title VII, which are to combat discrimination in the workplace and to compensate victims of on-the-job discrimination. It is questionable whether those goals could be furthered in cases like Ms. Kauffman's, unless responsible supervisors are held personally liable.

 It can be argued that Ms. Kauffman could have sued her supervisor directly on a theory of battery or some other common law tort. This is perhaps true, but is beside the point. The purpose of Title VII is to protect workers from certain kinds of prejudicial treatment on the job, not to federalize common law torts. The United States Supreme Court has held that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). To prove damages, a sex discrimination plaintiff need simply prove that her conditions of employment were adversely affected. *Carr v. Allison Gas Turbine Division, General Motors Corp.,* 32 F.3d 1007, 1008 (7th Cir.1994) (Posner, C.J.). Congress has stated that its intention in providing the 1991 amendments to the Civil Rights Act was "to provide appro-

priate remedies for intentional discrimination and unlawful harassment in the workplace; . . . ." Civil Rights Act of 1991, PL 102–166, § 3(1). It cannot be disputed that Ms. Kauffman was subjected to intentional discrimination and unlawful harassment, however er unless her supervisor can be held liable, she would have no remedy under Title VII.

 Finally, the language of Title VII itself introduces the concept of agency. 42 U.S.C. § 2000e. As Judge Higgins points out, both the Supreme Court and the Sixth Circuit have suggested that agency principles should be followed in analyzing liability under Title VII. *Wilson v. Wayne County,* 856 F.Supp. at 1264. *See Meritor Savings v. Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408 ("Congress wanted courts to look to agency principles for guidance"); *Kauffman,* 970 F.2d at 184 ("applying the broader general agency theory in supervisor liability fits the purpose of Title VII"). However, according to traditional principles of agency, both employer and agent can be held liable for the actions of the agent and judgment can issue against each. Restatement (Second) of Agency § 359C(1) (1957). Our own custom has been to allow for individual liability for co-employee supervisors, and this practice has never been challenged. Prior holdings in the Sixth Circuit give at least tacit approval of co-employee supervisor liability. Furthermore, co-employee supervisor liability is consistent with the stated purpose of Title VII: that victims of work place discrimination be compensated. Finally, the principles of agency require shared liability by both employer and agent. Therefore, a co-employee supervisor is personally and individually liable under Title VII for his or her own personal and individual acts of intentional discrimination.

## 2. CO–EMPLOYEE SUPERVISOR LIABILITY UNDER SECTION 4112.02(A)

 The question of individual liability for a co-employee who is a supervisor under Ohio Revised Code § 4112.02(A) has also not been squarely addressed in the Ohio courts. The statute prohibits

any employer, because of ... [the] sex ... of any person, to discharge without just cause ... or to otherwise discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment or any matter directly or indirectly related to employment.

Ohio Rev.Code § 4112.02(A). The Code defines an "employer" as

"any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer."

Ohio Rev.Code § 4112.01(A)(2). Where Title VII uses agency language, the Ohio statute uses the equivalently broad "any person acting directly or indirectly in the interest of an employer." Therefore, on its face, the Ohio statute is at least as inclusive as Title VII in placing liability on a co-employee supervisor.

Just as we saw above in regard to the Sixth Circuit's tacit approval of individual liability in Title VII cases, Ohio courts have given at least implicit approval of individual liability by reviewing without comment cases in which co-employee supervisors were named defendants. *See, for example, Neal v. Hamilton Cty, et al.,* 87 Ohio App.3d 670, 622 N.E.2d 1130 (Hamilton Cty 1993) (county and supervisors); *Barney v. Chi Chi's, Inc., et al.,* 84 Ohio App.3d 40, 41, 616 N.E.2d 269 (Montgomery Cty 1992) ("Chi Chi's is a restaurant chain, and the individual defendants were employed by Chi Chi's as managers"); *Frank v. Toledo Hosp., et al.,* 84 Ohio App.3d 610, 617 N.E.2d 774 (Lucas Cty 1992) (claims against hospital and administrators); *Davis v. Black, et al.,* 70 Ohio App.3d 359, 591 N.E.2d 11 (Franklin Cty 1991) (upholding judgment against church and pastor); *Larkins v. G.D. Searle & Co., et al.,* 68 Ohio App.3d 746, 589 N.E.2d 488 (Franklin Cty 1991) (suit against employer and two employees); *Cameron v. Hillsboro Board of Education, et al.,* 795 F.Supp. 228 (S.D.Ohio 1991) (Spiegel, J.) (school board and superintendent).

The Defendant cites one Ohio Common Pleas court case for the proposition that Ohio courts do not allow individual liability for a co-employee supervisor. *See Sowers v. Civil Rights Commission,* 20 Ohio Misc. 115, 49 Ohio Op.2d 203, 252 N.E.2d 463 (Trumble Cty Common Pleas 1969). On examination the holding in *Sowers* is not applicable to the case at bar. The *Sowers* Court simply held that the plaintiff, Sowers, did not engage in unlawful discriminatory practices when, as a member of the Newton Falls Exempted Village Board of Education, he voted against the hiring of a candidate for superintendent. *Sowers,* 20 Ohio Misc. at 142–43, 49 Ohio Op.2d at 218, 252 N.E.2d at 479–80.

The Plaintiff points out that the Ohio courts have held that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of Ohio Revised Code Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission,* 66 Ohio St.2d 192, 196, 20 Ohio Op.3d 200, 202–03, 421 N.E.2d 128, 131 (1981). We also note that the arguments against individual liability presented by the Ninth Circuit in *Miller,* based on the federal statutes limitations on the size of the employer's company, *Miller,* 991 F.2d at 587 and at 589, n. 1., are less applicable in Ohio where a employer need have only four employees and where there are no caps on compensatory or punitive damages. *See* Ohio Rev.Code 4112.01(B) and 4112.99. Therefore, the arguments presented above in regard to Title VII apply equally to the interpretation of Chapter 4112. In light of our holding above in regard to Title VII liability, as well as the plain language of the statute, and the tacit approval consistently given to individual liability of co-employee supervisors in discrimination actions, the Defendant's Motion to Dismiss claims based on Ohio Revised Code Chapter 4112 must be denied.

## CONCLUSION

Having reviewed the somewhat uncertain state of the law of federal law in this area, we conclude that in the Sixth Circuit at least, co-employee supervisors may be sued in their individual capacity under Title VII. Our analysis leads us to the same conclusion in regard to Ohio Revised Code Chapter 4112. In addition there remains a question of fact as to whether Dr. Graue and the other individual Defendants collectively comprise De-

fendant USDA or Defendant USAC. Since we decline to dismiss these claims, it is judicially efficient and economical for us to retain jurisdiction over Plaintiff's state tort claims.

Accordingly, Defendant Dr. Graue's Motions to Dismiss (docs. 20 & 29) are DENIED. Additionally, the Defendants' other Motion to Dismiss (doc. 6) is now moot in light of Plaintiff's Amended Complaint. Therefore, that motion (doc. 6) is DENIED without prejudice to refiling, and we note that the Defendants have now renewed their motion (doc. 31).

SO ORDERED.