**Kimberly C. KRAMER, Plaintiff,**

v.

**WINDSOR PARK NURSING HOME, INC., et al., Defendants.**

No. C–1–95–115.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 10, 1996.

James Michael Moore, Lindhorst & Dreidame, Cincinnati, OH, for plaintiff.

Lewis Herbert Seiler, Cincinnati, OH, Norman J Frankowski, II, Geoffrey E. Webster, Geoffrey Everett Webster, Columbus, OH, for defendants.

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 36), Plaintiff's response (doc. 38) and Defendants' reply (doc. 40).

### BACKGROUND

Ms. Kramer was employed by Windsor Park Nursing Home ("Windsor Park") on three separate occasions: August 1985 through April 1987, September 1989 through April 1990, and October 1990 through May 5, 1993. Defendant, Alvis Byars, is part owner, President and CEO of Windsor Park. Ms. Kramer has sued Windsor Park and Mr. Byars (collectively "Defendants") in his individual capacity as her supervisor.

Ms. Kramer was first hired as the activity director at the nursing home in August 1985. The job description of the activities director states that she is required to plan and organize activities. In addition, the activities director is responsible for keeping records of the activities and documenting the residents participation in the activities. The Parties agree that Ms. Kramer was very good at planning and organizing activities, but was deficient in her documentation. In fact, she was terminated for insufficient documentation in October 1987, but rehired twice because of her proficiency in organizing activities.

This action arises out of the final employment period which ran from October 1990, through May 5, 1993. Debbie Law, the personnel director at Windsor Park, rehired Ms. Kramer to be activities director. Ms. Kramer shared the position with another individual—Debbie Ronan. In the beginning of this third employment period, Ms. Ronan was responsible for the required documentation, and Ms. Kramer was responsible for activities portion. See Deposition of Deborah Law, p. 47.

In September 1992, Debbie Ronan was transferred to another position because of a lack of funds for the activities department. Defendants claim that Ms. Kramer then

agreed to complete the required paperwork in addition to her other duties.

In late April, 1993, Ms. Kramer began to experience headaches and loss of muscle control. Ms. Kramer was admitted to the hospital and was eventually diagnosed with Multiple Sclerosis ("MS"). She remained in the hospital until May 1, 1993.

Defendants claim that while Ms. Kramer was hospitalized they discovered that Ms. Kramer had failed to keep up with the required paperwork. Defendants terminated Ms. Kramer's employment on May 5, 1993 for her failure to do her paperwork. Defendants contend that they discharged Ms. Kramer at the urging of Pamela Neace, the Director of Nursing at Windsor Park, because she felt she could no longer work with Ms. Kramer.

Ms. Kramer filed a seven count complaint alleging: (1) sexual harassment in violation of Title VII, 42 U.S.C. § 2000e, (2) discharge in violation of the Americans with Disabilities Act 42 U.S.C. 12201 et seq., (3) termination in violation of the Rehabilitation Act of 1973 29 U.S.C. § 701, et seq., (4) intentional infliction of emotional distress, (5) breach of contract, (6) sexual harassment in violation of O.R.C. § 4112.99, and (7) wrongful discharge for sexual harassment.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, ..., against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321, 106 S.Ct. at 2551; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir.1992). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " Guarino, 980 F.2d at 405 (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).

## DISCUSSION

### I. No Individual Liability under Federal Discrimination Statutes

█ Ms. Kramer has sued Mr. Byars in his individual capacity as owner/administrator of Windsor Park. Mr. Byars argues he cannot be held individually liable under Title VII. Although we recognize that the majority of circuits disagree with us,[1] we continue

---

1. Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir.1995); E.E.O.C. v. AIC Security Investiga-

tions, Ltd., 55 F.3d 1276, 1280–81 (7th Cir.1995); Lenhardt v. Basic Institute, 55 F.3d 377, 381 (8th

to adhere to our view that Title VII does provide for individual supervisor liability. *See Johnson v. University Surgical Group Associates of Cincinnati,* 871 F.Supp. 979, 986 (S.D.Ohio 1994).

In *Johnson,* we identified three reasons why Title VII provides for individual supervisors liability. First, prior holdings of the Sixth Circuit give at least tacit approval of co-employee supervisor liability. *See Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986) (stating in dictum "the law is clear that individuals may be held liable ... as 'agents' of an employer under Title VII."); *Romain v. Kurek,* 772 F.2d 281 (6th Cir. 1985) (tacitly approving district court's judgment finding individual jointly and severally liable for Title VII violation). Second, individual liability promotes the purposes of Title VII. *See* Civil Rights Act of 1991, PL 102–66, § 3(1) ("to provide appropriate remedies for intentional discrimination and unlawful harassment in the work place...."). Third, agency principles are followed through Title VII. These principles support shared liability on the part of both employer and agent. *Restatement (Second) of Agency,* § 359C(1) (1957). Accordingly, we will adhere to our conclusion that Title VII does provide for individual liability until the Sixth Circuit or the Supreme Court decides otherwise.

■ This reasoning also applies to Plaintiff's charges under the ADA and the Rehabilitation Act. Accordingly, we find that Mr. Byars can be held individually liable for violations of Title VII, the Rehabilitation Act and the ADA.

## II. Failure to Exhaust Administrative Remedies

■ Mr. Byars also asserts that he should be dismissed from the case since Ms. Kramer failed to name him in her Equal Employment Opportunity Commission ("EEOC") charge. A person alleging a violation of Title VII must exhaust her administrative remedies before suing in federal court. *Love v. Pull-*

*man Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972). In this instance, Ms. Kramer did file a timely charge with the EEOC. Mr. Byars, however, argues that she failed to name him in the charge, and thus, her charge fails to satisfy the exhaustion requirement.

■ Generally, a plaintiff may not sue a party not named in the EEOC charge unless there is a clear identity of interest. *Jones v. Truck Drivers Local Union No. 299,* 748 F.2d 1083, 1086 (6th Cir.1984). The requirement that a plaintiff name a defendant in an EEOC charge before filing suit serves two goals. *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir.1987). First, the charge provides the defendant, and the EEOC, notice of the discrimination claim. *Id.* Second, the charged party is then able to participate in conciliation efforts directed at securing voluntary compliance. *Id.*

■ The jurisdictional requirements of Title VII, however, should be liberally construed in favor of complainants. *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 887 (3d Cir.1977). Because EEOC charges are often filed without the assistance of counsel, insisting on "procedural exactness in stating the charge" would frustrate the remedial goals of Title VII. *Romain,* 836 F.2d at 245. Accordingly, a plaintiff will be excused from naming a defendant in an EEOC complaint if an identity of interest exists between the named and unnamed party. *Id.*

■ "Courts generally find an identity of interest where the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union 130,* 657 F.2d 890, 905 (7th Cir.1981)). The Sixth Circuit adopted a four factor test to determine whether the relationship between the named

---

Cir.1995); *Smith v. Lomax,* 45 F.3d 402, 403–04 (11th Cir.1995); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.1994); *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994); *Lankford v. City of Hobart,* 27

F.3d 477, 480 (10th Cir.1994); *Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.1994); *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587–89 (9th Cir.1993).

and unnamed parties creates a sufficient identity of interest.

(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of filing of the EEOC complaint;

(2) whether, under the circumstances, the interests of the named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation it would be unnecessary to include the unnamed party in the EEOC complaint;

(3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain*, 836 F.2d at 246. This is a balancing test where none of the factors is decisive. *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.1980), *vacated on other grounds sub nom., Retail, Wholesale & Dept. Store Union v. G.C. Murphy*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981).

■■■ We find that on balance the factors indicate that Mr. Byars and Windsor Park share an identity of interest. The first prong tilts in favor of a lack of identity, but the second and third prongs lean in favor of identity of interest. Although Ms. Kramer was aware of Mr. Byars's role in the events, Mr. Byars' and Windsor Park's interests are similar because he is not only the CEO, but co-owner of the corporation. Furthermore, Mr. Byars was not prejudiced by the omission of his name from the EEOC complaint since he received notice and was involved in Windsor Park's response to the EEOC investigation. Accordingly, we find that Mr. Byars and Windsor Park share an identity of interest sufficient to excuse Ms. Kramer's failure to name Mr. Byars in the caption of her EEOC complaint.

■■■ Even if there were not an identity of interest, Ms. Kramer's EEOC complaint is adequate because she named Mr. Byars in the body of the complaint. A statement in the body of an EEOC charge that names the defendant and describes his ac-

tions satisfies the procedural requirements of Title VII. *Dreisbach v. Cummins Diesel Engines, Inc.*, 848 F.Supp. 593, 596–97 (E.D.Pa.1994); *Kinnally v. Bell of Pennsylvania*, 748 F.Supp. 1136, 1140 (E.D.Pa.1990); *Acampora v. Boise Cascade Corp.*, 635 F.Supp. 66, 71 (D.N.J.1986). In *Kinnally*, the plaintiff failed to name the individual defendants in the caption of her EEOC complaint. *Kinnally*, 748 F.Supp. at 1140. She, however, described their conduct in the body of the complaint. The court found that the factual description served the purpose of the EEOC filing, and thus, satisfied the basic procedural requirements. *Id.*

Ms. Kramer, likewise, failed to name Mr. Byars in the caption but did describe his conduct in the body of the complaint. Thus, Mr. Byars had sufficient notice of the alleged discriminatory conduct and opportunity to conciliate the charges. *See id.* (finding that defendant "received every indication that [his] conduct was being formally reviewed" from factual statement).

### III. Sufficiency of Claims under the ADA and the Rehabilitation Act

In Counts 2 and 3 of her complaint, Ms. Kramer alleges that she was terminated in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. Defendants argue that Ms. Kramer's claims should be dismissed because they did not know of her disability when they made the decision to fire her. Furthermore, Defendants assert that Ms. Kramer admitted that she was unable to return to work, therefore, she was not otherwise qualified.

■■■ The ADA makes it unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual" in the terms and conditions of employment. 42 U.S.C. § 12112(a) (1995). The Rehabilitation Act provides, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her disability, be excluded from participation in, denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 749(a). The ADA and the Rehabilitation Act provide parallel pro-

tection and thus, are analyzed in a similar manner. *Maddox v. University of Tennessee,* 62 F.3d 843, 846 n. 2 (6th Cir.1995).

▪ In order to recover on a claim of disability discrimination under the ADA or the Rehabilitation Act, a plaintiff must show that: 1) she is a handicapped individual; 2) she is otherwise qualified for the position or to participate in the program; 3) she was discriminated against solely by reason of her handicap; and under the Rehabilitation Act 4) the relevant program receives federal funding. *Id.* at 846; *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1177 (6th Cir.1996).

▪ The Sixth Circuit recently engaged in an extensive discussion of the proper analytical framework for disability discrimination claims. *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173 (6th Cir. 1996). In *Monette,* the Sixth Circuit distinguished claims where either the plaintiff has direct evidence or the employer concedes that the employer relied on the employee's handicap in making the challenged employment decision, from cases where the plaintiff has only "indirect" proof of discrimination. *Id.* at 1185; *see also Burns v. City of Columbus, Dep't of Public Safety,* 91 F.3d 836, 841 (6th Cir.1996) ("the most fundamental distinction between types of handicap discrimination claims turn on whether the grantee of federal funds *acknowledges or relies on* the handicap in making a decision adverse to the plaintiff.") (emphasis in original). The court concluded that the burden-shifting analysis of *McDonnell Douglas* was appropriate in only the latter situation.

> [W]hen the plaintiff has direct evidence of discrimination based on his or her disability, there is no need for the McDonnell Douglas type burden shift and traditional burdens of proof will apply.... In cases in which the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability, the plaintiff may attempt to establish his or her claim indirectly through the burden shifting method borrowed from McDonnell Douglas by establishing a prima facie case of discrimination and shifting the burden to the employer to offer a

legitimate, nondiscriminatory reason for its action.

*Id.* at 1184.

▪ This distinction arises because of the unusual nature of the disability discrimination laws as compared to traditional Title VII discrimination. Almost never will race or gender be an appropriate basis for an employment decision, but both the ADA and the Rehabilitation Act only forbid actions based solely upon the plaintiff's handicap. *Burns,* at 841. Therefore, an employer may consider an employee's handicap, if, for example, the handicap causes her to be unable to perform an essential function of the job. *Id.* (citing *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 288 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987)).

▪ Where the employer denies using the employees' handicap in the decision, then the traditional Title VII burden-shifting analysis is still applicable. The Sixth Circuit thus adopted a modified version of the McDonnell Douglas test for those disability discrimination claims. In order to establish a prima facie case of disability discrimination, the plaintiff must show that: "1) he or she is disabled, 2) is otherwise qualified for the job, with or without reasonable accommodation, 3) suffered an adverse employment decision, 4) the employer knew or had reason to know of his or her disability; and 5) after rejection or termination the position remained open, or the disabled individual was replaced." *Monette,* at 1185 (internal citations omitted). If the plaintiff is able to establish all of these facts, she is entitled to a mandatory inference that the adverse employment decision was taken solely because of her handicap. *Id.; see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993) (establishing a prima facie case creates a presumption that the employer unlawfully discriminated against the employee) (internal citations omitted). The defendant must then offer a legitimate reason for its decision unrelated to the disability. *Monette,* 90 F.3d at 1185. If the defendant makes such a showing, the plaintiff must come forward with evidence

that the proffered explanation is pretextual. *Id.*

In this case, the Defendants assert that they were unaware of Ms. Kramer's disability until after they made the decision to terminate her. Defendants further assert that Ms. Kramer has failed to show that she was fired as a result of her disability since they fired her because she failed to complete the necessary paperwork incidental to her position. Finally, Defendants argue that Ms. Kramer cannot be "otherwise qualified" because she stated that she could no longer work.

The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Ms. Kramer was diagnosed with multiple sclerosis ("MS") in early May 1993. No one denies that Ms. Kramer is now in fact disabled. The dispute is whether the Defendants became aware of Ms. Kramer's disability prior to her dismissal. Defendants assert that they did not become aware of the diagnosis until May 10, 1993, five days after issuing her termination letter.

Ms. Kramer counters that the Defendants and their employees knew she was ill and the probable cause of her illness before any decision to terminate her was made. Ms. Kramer entered the hospital on April 27, 1993, complaining of headaches and loss of muscle control. Pamela Neace visited Ms. Kramer in the hospital and was aware that tests were being run for MS. Other Windsor Park employees, including Mr. Byars' daughter, knew that Ms. Kramer had been diagnosed with MS prior to her discharge from the hospital on May 1, 1993.

■ According to the Defendants, it was Ms. Neace's complaints that lead to Ms. Kramer's termination. As a registered nurse, Ms. Neace knew the seriousness of a probable diagnosis of MS, especially since Ms. Neace had observed Ms. Kramer's loss of muscle control at work. Accordingly, we find that there is a question of fact whether Defendants knew or perceived Ms. Kramer as disabled prior to her termination.

Defendants also argue that Ms. Kramer admitted that she was no longer otherwise qualified. Defendants reach this conclusion based on Ms. Kramer's statement that she had to quit her next job because she was unable to continue working. However, Ms. Kramer's inability to continue working did not occur until more than a year after she was fired. In fact, when she left the hospital, Ms. Kramer told Mr. Byars that she could return to work. Furthermore, Ms. Kramer asserts that she was unable to work in 1994 because she was without insurance to purchase medicine to control her condition. Accordingly, we find that there is a genuine issue of fact whether Ms. Kramer was "otherwise qualified" when the Defendants terminated her employment.

Even if Ms. Kramer can demonstrate a prima facie case, Defendants assert that they fired her for legitimate reasons completely separate from her disability. Defendants assert that they fired Ms. Kramer because of her failure to complete her required paperwork and her lying to cover-up her failure. Again, we find that Ms. Kramer has submitted sufficient facts to create a question of fact whether the Defendants' stated reasons were a pretext for discrimination.

■ A plaintiff may demonstrate that an employment decision was a pretext for discrimination by showing that "the asserted reasons had no basis in fact, the reasons did not in fact motivate the discharge, or, if they were factors in the decision, they were jointly insufficient to motivate the discharge." *Maddox v. University of Tennessee*, 62 F.3d at 848. In 1990, Windsor Park rehired Ms. Kramer, after letting her go twice—once for failure to complete paperwork—because they needed someone to "motivate" the home's residents. Ms. Kramer was rehired under an agreement that she would not have to complete the paperwork of the activities director. Defendants counter that this arrangement changed when they had to transferred Debbie Ronan. Defendants assert that Ms. Kramer then agreed to take on responsibility for the paperwork.

We find that a question of fact exists whether the discharge was a pretext. The

Defendants rehired Ms. Kramer knowing that she had failed to complete her paperwork in the past. Despite this knowledge, no one at Windsor Park investigated whether Ms. Kramer actually completed her paperwork until she entered the hospital—more than nine months after Ms. Kramer allegedly agreed to do the paperwork. Windsor Park needed her to motivate the residents and was willing to pay an extra person to complete the required paperwork. In fact, Mr. Byars "wanted her bad enough" as an employee that he gave her a raise that she did not "deserve." Byars, Depo. p. 90. Furthermore, Mr. Byars even took it upon himself to pay Ms. Kramer's bills—deducting the amount from her paycheck and paying the landlord or utility company directly himself. Thus, Mr. Byars was well aware of Ms. Kramer's weakness in performing tedious, yet important functions such as paperwork.

Accordingly, the proffered reason seems "insufficient to motivate the discharge" since the Defendants knew of the deficiency, rehired Ms. Kramer anyway, and failed to keep track of this deficiency. It can be reasonably inferred that the decision to terminate Ms. Kramer immediately following her hospitalization was motivated by a fear of her real or perceived disability. Therefore, the Court DENIES Defendants' motion for summary judgment on Counts 2 and 3.

## IV. Intentional Infliction of Emotional Distress.

In Count 4, Ms. Kramer accuses Mr. Byars and Windsor Park of intentional infliction of emotional distress. Defendants argue that Ms. Kramer failed to plead or prove the elements of a claim for intentional infliction of emotional distress. Specifically, Defendants assert that Ms. Kramer failed to show any intent on their part or show that the Defendants' conduct was the proximate cause of her distress.

■ Ohio first recognized a tort for intentional infliction of emotional distress in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983). In order to prove a claim for intentional infliction of emotional distress, a plaintiff must demonstrate (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Management, Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994). In *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 47, 570 N.E.2d 1076 (1991), the Ohio Supreme Court found that an cause of action for intentional infliction of emotional distress may arise from an employer's conduct.

■ Here, Defendants argue that Ms. Kramer has failed to sufficiently plead intent on the part of the Defendants so as to state a claim against an employer, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193, 532 N.E.2d 753 (1988). In *Mitchell*, the Ohio Supreme Court heightened the pleading requirements for suits against employers for "intentional" torts. Under *Mitchell*, a plaintiff must allege facts that "the employer (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result form the employer's act and despite this knowledge, still proceeded." *Id.* The heightened pleading requirement for employer intentional torts, however, is inapplicable to a claim for intentional infliction of emotional distress. *Russ*, 59 Ohio St.3d at 47–48, 570 N.E.2d 1076 (rejecting employer's argument that employee must show either the employer specifically desired to injure him, or knew that the harm was substantially certain to occur in order to recover for an intentional tort).

■ An employee's need to plead and prove specific intent on the part of his employer is only relevant for determining whether the employee may receive tort damages in addition to a worker's compensation award. *Id.* at 48, 570 N.E.2d 1076. The court requires plaintiffs to make this showing in order to limit where a worker can recover from both the workers' compensation system and the employer through ordinary tort remedies. Furthermore, a claim for emotional distress is recoverable irrespective of the mental state of the tortfeasor. *Id.* Finally, emotional distress claims are considered out-

side the scope of employment, and therefore, not injures to be remedied under the workers' compensation system. *Id.* Accordingly, Ms. Kramer need only meet the ordinary tort pleading requirements of infliction of emotional distress. We find that her allegations of offensive sexual conduct on the part of Mr. Byars are sufficient to state a claim for infliction of emotional distress. Accordingly, the Court DENIES Defendants' motion for summary judgment on Count 4.

## V. Breach of Contract

In Count 5, Ms. Kramer alleges that her termination for failure to complete paperwork constitutes breach of contract. Ms. Kramer claims that she was hired on the express promise that she would not have to complete paperwork. Defendants counter that Ms. Kramer was an at-will employee, and thus, could be fired for any reason.

■ "Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law." *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). The Ohio Supreme Court has recognized two exceptions to the general rule which states that in absence of a written promise of employment for a definite duration, an employer may discharge an employee for any reason.

■ First, the "facts and circumstances" surrounding the employment relationship may establish the existence of an implied or express agreement that alters the terms for discharge. *Id.* (citing *Henkel v. Educ. Research Council,* 45 Ohio St.2d 249, 344 N.E.2d 118 (1976)). A court should consider the character of the employment, custom, the course of dealing between the parties, company policy or any other facts which may illuminate whether the parties altered the at-will employment relationship. *Id.* at 104, 483 N.E.2d 150.

■ Second, an employer's right to discharge an employee may be limited by the doctrine of promissory estoppel. *Id.*

[T]he doctrine of promissory estoppel is applicable to oral employment-at-will agreements when a promise which the employer should reasonable expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Id.* at 105, 483 N.E.2d 150.

Although Ms. Kramer plead a breach contract claim, she seems to argue a promissory estoppel claim in response to the motion for summary judgment. The Parties agree that Ms. Kramer was not responsible for the paperwork of the activities department when Defendants rehired her for the third and final time in 1990. Instead, Ms. Kramer directed the activities, and Debbie Ronan completed the required paperwork. In September 1992, Defendants transferred Ms. Ronan to another facility. Defendants claim that Ms. Kramer agreed to assume responsibility for the activities paperwork after Ms. Ronan's transfer. Ms. Kramer, however, disputes that she ever agreed to do paperwork during her third employment with Windsor Park.

■ We find that there is a genuine issue of material fact whether the parties modified Ms. Kramer's at-will employment status. Viewing the facts in the light most favorable to Ms. Kramer, a reasonable jury could conclude that the Parties agreed to exclude the activities department paperwork from Ms. Kramer's job description, or in the alternative, that Ms. Kramer detrimentally relied on the Defendants' promise that she would not have to complete paperwork. In either case, a jury could conclude that terminating Ms. Kramer for failure to complete the paperwork amounts to a breach of that promise. Accordingly, the Court hereby DENIES Defendants' motion for summary judgment on Count 5.

## VI. State Statutory Discrimination Claims

In Count 6, Ms. Kramer alleges that the Defendants discriminated against her and

terminated her in violation of O.R.C. § 4112.99. Defendants argue that Ms. Kramer's claim must be dismissed because she has failed to identify under which section of chapter 4112 she is claiming a violation. Defendants assert that Ms. Kramer has abandoned her claims by failing to specify the state law under which she sues.

■ Ohio Revised Code § 4112.99, states "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." Several other sections of the Ohio Revised Code also create causes of action for employment discrimination. *See, e.g.,* O.R.C. § 4111.17; O.R.C. § 4112.02(N). Section 4112.99 creates a private right of action separate and distinct from those remedies available in other sections of ch. 4112. *Elek v. Huntington National Bank,* 60 Ohio St.3d 135, 136, 573 N.E.2d 1056 (1991). "Moreover, the section specifically states that the civil action is available to remedy any violation of *this* chapter (*i.e.,* R.C. Chapter 4112)." *Id.* (emphasis in original). Finally, the state legislature only requires those claiming age discrimination to elect between the various remedies offered to remedy age discrimination. *Larkins v. G.D. Searle,* 68 Ohio App.3d 746, 750–51, 589 N.E.2d 488 (1991).

■ Ms. Kramer has alleged that the Defendants sexual harassed her and terminated her because of her perceived disability. Ohio Revise Code § 4112.02(A), makes it an "unlawful discriminatory practice for an employer, because of sex, . . . [or] handicap . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment. . . ." A plaintiff may plead a cause of action for a violation of this section under § 4112.99. Accordingly, Ms. Kramer has stated a cause of action under § 4112.99. We find no reason for Ms. Kramer to plead more specifically because her cause of action arises under § 4112.99. Therefore, the Court DENIES Defendants motion for summary judgment as to Count 6.

## VII. Wrongful Termination

■ Ms. Kramer also alleges that her termination was in violation of public policy, and therefore, was a wrongful discharge.

Recently, the Ohio Supreme Court recognized a cause of action in tort for discharge in derogation of public policy. *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995). The Ohio Supreme Court identified four elements of the tort of discharge in derogation of public policy:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Id.* at 69–70, 652 N.E.2d 653 (quoting H. Perrit, The Future of Wrongful dismissal Claims: Where does Employer Self Interest Lie? 58 U.CIN.L.REV. 397, 398–99 (1989) (emphasis in original)). In addition, the court noted that the clarity and jeopardy elements are questions of law for the court. *Id.*

Ms. Kramer's complaint asserts "that by engaging in sexual harassment of plaintiff, and by terminating her employment, defendants have committed a wrongful discharge of plaintiff." Ms. Kramer seems to combine two main allegations: one, that she was sexually harassed and two, that she was discharged because of the diagnosis of her disability. Ms. Kramer, however, does not argue that she was constructively discharged. Accordingly, we interpret this claim as a claim for wrongful discharge due to her disability.

■ Under the *Collins* analysis, we must determine if there is a public policy against disability discrimination. Ohio Revised Code § 4112.02(A), the Rehabilitation Act and the ADA clearly demonstrate that there is a public policy against discrimination based on

disability. Therefore, Ms. Kramer's claims satisfy the clarity element.

 Next, the court must determine whether the termination jeopardizes public policy. The important question under the jeopardy analysis is "whether the public policy tort should be rejected where the statute expressing the public policy already provides adequate remedies to protect the public interest." *Id.* at 73, 652 N.E.2d 653.

 In *Collins,* the Ohio Supreme Court found that the remedies for sexual harassment provided in Chapter 4112 did not defeat the plaintiff's wrongful discharge tort. *Id.* The court distinguished the factual situation in *Collins* on two grounds. First, the adequacy of remedies inquiry is "confined to cases '[w]here right and remedy are part of the same statute which is the *sole source* of the public policy opposing discharge.' " *Id.* (emphasis in original) (quoting *Watson v. Peoples Sec. Life Insurance Co.,* 322 Md. 467, 588 A.2d 760 (1991)). A statute containing the right and remedy will not foreclose recognition of the public policy tort, if there is more than one source for the policy. *Collins,* 73 Ohio St.3d at 73, 652 N.E.2d 653. The Ohio Supreme Court found several sources of the policy against sexual harassment, including criminal prohibitions on offensive sexual contact, and concluded that Chapter 4112 did not preempt common-law tort actions. *Id.* at 71–72, 652 N.E.2d 653 (*Helmick v. Cincinnati Word Processing, Inc.,* 45 Ohio St.3d 131, 135, 543 N.E.2d 1212 (1989)).

Second, the court found that, despite O.R.C. § 4112, the plaintiff in *Collins* had no adequate remedy since her employer was exempt from coverage by the statute. *Id.* at 74, 652 N.E.2d 653. The court did not believe that the legislature meant for small business to have a "license to sexually harass/discriminate against their employees with impunity." *Id.*

 Ms. Kramer cannot satisfy the jeopardy element of the *Collins* analysis. Ms. Kramer has failed to identify any statutory or other public policy, beyond those already granting her right to relief, which were violated by her discharge. Thus, there is a single source of the policy against disability discrimination. Furthermore, Ms. Kramer does not assert that her statutory remedy is inadequate. Accordingly, Ms. Kramer's wrongful discharge claim does not come within *Collins* exception to the employment-at-will doctrine. Therefore, the Court GRANTS Defendants' motion for summary judgment on Count 7. The Court hereby DISMISSES Count 7.

## VIII. Civil Rights Act

 Finally, Defendants argue that Ms. Kramer has no cause of action for disability discrimination under Civil Rights Act. Although we agree that Ms. Kramer's disability discrimination claim is not included within Title VII, it is clear that her sexual harassment claims are properly plead under Title VII. *See, e.g., E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504 (9th Cir.1989) (finding hostile work environment created by unwanted sexual advances violates Title VII). Therefore, Ms. Kramer has a claim for sexual harassment pursuant to Title VII.

## CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment. The Court also GRANTS Defendants' request for judicial notice. Count 7 is hereby DISMISSED. All other Counts remain for trial.

SO ORDERED.