**Yvette Renae WINSTON, Plaintiff**

v.

**HARDEE'S FOOD SYSTEMS, INC. and Ernie Williams, Defendants.**

**Civ. A. No. 95–CV–53–BG(R).**

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Sept. 25, 1995.

David F. Broderick and Pamela Carolyn Bratcher of Broderick, Thornton & Pierce, Bowling Green, KY, for Plaintiff Yvette Renae Winston.

Richard G. Griffith, Stites & Harbison, Lexington, KY, and Michael C. Lynch of Reed, Smith, Shaw & McClay, Washington, D.C., for Defendant Hardee's Food Systems, Inc.

Scott A. Bachert and Joy D. Denton of Harned, Bachert & Denton, Bowling Green, KY, for Defendant Ernie Williams.

MEMORANDUM OPINION

RUSSELL, District Judge.

This matter is before the court upon defendant Williams' motion to dismiss from the Title VII claim in this complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. No motion was made concerning the state tort law claim of intentional infliction of emotional distress.

I. Facts

Winston filed this action against defendants Eddie Williams and Hardee's Food Systems, Inc. alleging that she was subjected to hostile and unwelcome sexual harassment creating a hostile work environment during the course of her employment with "Hardee's" restaurants. She alleges that the acts

of defendant Williams and failure to act by defendant Hardee's have inflicted severe emotional distress upon her. She brings these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e *et seq.* (West 1994). She also invokes the court's pendant jurisdiction over her state tort claims.

Plaintiff's claims stem from her employment as a worker at Hardee's restaurant in Glasgow, Kentucky. Plaintiff began working for Hardee's in August of 1992. In the first week of April, 1994, Ernie Williams was assigned to work as store manager and supervisor of the Hardee's restaurant in Glasgow. Plaintiff asserts that within the first several days of Williams' tenure at the Glasgow Hardee's, she and other female workers began to be subjected to sexual harassment which continued until Williams was reassigned to the Bowling Green Hardee's restaurant in the middle of May, 1994. According to plaintiff, this harassment included sexual jokes, remarks and gestures, unwanted touching and groping of plaintiff's breasts and other parts of her body, and physical intimidation. Plaintiff alleges that the workplace was permeated with hostile and discriminatory behavior of a sexual nature which created a hostile or abusive working environment.

Plaintiff asserts that she reported this behavior to the assistant manager at the Glasgow Hardee's during the week of April 25, 1994, but was told only to continue to be firm and that Williams would stop his behavior. Plaintiff asserts that in the week of May 2, 1994, a co-employee reported Williams' behavior to the Hardee's district manager. Plaintiff states that she was afraid that Williams would be angry when he discovered that he had been reported. Plaintiff asserts that she avoided working with Williams from that point forward by calling in sick. Later that week, the district manager visited the Glasgow restaurant. During the next week of May 9, 1994, plaintiff alleges that she related events that had occurred concerning Williams to the district manager and local assistant manager. Plaintiff asserts that she was assured that disciplinary action and pos-

sible termination would be imposed concerning Williams, pending the results of an investigation by Human Resources. Plaintiff states that in the middle of May, 1994, Williams was reassigned to work at the Hardee's restaurant in Bowling Green, Kentucky.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Hardee's on October 25, 1994. Plaintiff filed this lawsuit on April 14, 1995. Defendant Ernie Williams filed a motion to dismiss the Title VII claim against him on June 29, 1995 for failure to state a claim. Williams raises two arguments in his motion to dismiss. First, defendant Williams argues that supervisors and managers are not personally liable as "employers" for violations of Title VII. Second, the plaintiff failed to file a charge of discrimination with the EEOC against defendant Williams as an employer and plaintiff has therefore not exhausted her administrative remedies. Because the court finds defendant Williams' first argument persuasive, the second argument is not addressed. For the reasons below, defendant Williams motion to dismiss the Title VII claim against him in this action is granted.

II. Discussion

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim must be viewed in the light most favorable to the opposing party. *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The court must accept all facts alleged by the opposing party as true and grant the motion only if no set of alleged facts would entitle the opposing party to relief. *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, Williams' motion to dismiss creates a pure question of law in interpreting the liability provisions of Title VII concerning individual supervisors and managers, apart from the liability of their employers.

Title VII makes it unlawful for an employer to discriminate against employees on the basis of gender.[1] The Act defines "employ-

---

**1.** Specifically, 42 U.S.C.A. § 2000e–2 sets out "Unlawful Employment Practices" under Title

VII as follows:

er" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C.A. § 2000e(b) (West 1994). While it is settled law that employers are liable under respondeat superior for acts of discrimination of their employee agents, the issue before this court is whether the employee agents may be separately liable as "employers" under Title VII. Williams argues that Title VII does not impose liability upon employee supervisors in their individual capacity, but only in their official capacity which imputes that liability to the employer. The plaintiff claims that Williams, as an employee supervisor, is an "agent" of his employer and is therefore within Title VII's definition of an "employer." As such, plaintiff alleges that Williams is personally liable as an employer under Title VII.

The Sixth Circuit has not directly addressed the issue of agent liability under Title VII, although such liability has been occasionally mentioned in dicta. *See, e.g., Romain v. Kurek,* 772 F.2d 281, 282 (6th Cir.1985). In *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982), the Sixth Circuit defined an "agent" to be a "supervisory or managerial employee to whom employment decisions have been delegated by the employer." Although personal liability of supervisor agents as "employers" under Title VII was not an issue before the court, *York* did state that an agent could be "sued in his official capacity" as a representative of the employer, assuming that the principal entity fit within Title VII's "employer" definition. *Id.* at 362. The court illustrated this distinction between a defendant's official and individual capacity by giving other examples of agents sued in their official capacity such as college presidents and superintendents of schools. *Id.* Under these examples, *York* suggests that an agent is sued under Title VII only as a means to impose respondeat superior liability upon the employer.

Several district courts within the Sixth Circuit have addressed agent liability under Title VII and the majority of these cases have found no individual liability. *Lowry v. Clark,* 843 F.Supp. 228 (E.D.Ky.1994); *Bremiller v. Cleveland Psychiatric Institute,* 879 F.Supp. 782 (N.D.Ohio 1995) (following *Lowry* ); *Wilson v. Wayne County,* 856 F.Supp. 1254 (M.D.Tenn.1994) (recognizing and following the weight of authority finding no individual liability for Title VII violations). *Contra Johnson v. University Surgical Group,* 871 F.Supp. 979 (S.D.Ohio 1994) (declining to follow *Lowry* and finding individual agent liability). This result is consistent with *York's* suggestion that agents were intended to be sued under Title VII only in their official capacity in order to impute liability to the employer.

In his motion to dismiss, Williams cites *Lowry* and *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) (specifically followed in *Lowry* ), for the proposition that Title VII imposes no individual liability under Title VII. *Miller* recognized that while the "employer" definition includes agents of an employer, "the obvious purpose of the agent provision was to incorporate respondeat superior liability into the statute." *Id.* at 587. In support of this interpretation, legislative discussions of the "employer" definition of Title VII at the time of passage include no mention of the "agent" provision. *Lowry* at 230, citing H.R.Rep. No. 914, 88th Cong., 2d Sess. (1964), reprinted in 1964 U.S.C.C.A.N. 2391, 2401. Since an independent basis of liability for individual supervisors and managers apart from their employers would certainly create at least minimal concern and disagreement, this lack of discussion of the "agent" language indicates that no separate basis of liability was ever intended. *Lowry* at 230.

Within the Sixth Circuit district courts addressing agent individual liability, one court has found such liability. In *Johnson v. University Surgical Group,* the court found individual agent liability after citing an absence

(a) It shall be unlawful employment practice for any employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of ... sex....
42 U.S.C.A. § 2000e–2 (West 1994).

of Sixth Circuit binding precedent and undertaking an independent analysis of the statute. *Johnson*, 871 F.Supp. at 985. In this analysis, the *Johnson* court first considered the statutory text and concluded that the plain meaning indicated that supervisors, as "agents" of an employer, could be personally liable for discriminatory acts during the course of employment. *Id.* at 982.

The *Miller* court also analyzed the plain language of the statute and acknowledged that the "agent" text taken alone might indicate individual liability. The court found that when the "agent" provision was taken in context with the express exclusion for employers with fifteen or fewer employees, an interpretation of individual agent liability would create a statutory inconsistency. *See* 42 U.S.C.A. § 2000e(b) (West 1994). The *Miller* court concluded:

> The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees ... in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress intended to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Miller*, 991 F.2d at 587.

In addition to the plain meaning of the statute, the *Johnson* court argued that many of the cases decided prior to 1991 which found no individual liability for supervisors within the agent language relied significantly on the limited remedies available under the Act. *Johnson*, 871 F.Supp. at 982, 983. Prior to 1991, many courts presumed that Congress did not intend individual liability for supervisors because the only available remedies were reinstatement and back pay which only employers could provide. *Id.* However, the 1991 amendments expanded available remedies to include compensatory and punitive damages. The Civil Rights Act of 1991, 42 U.S.C.A. § 1981a (West 1994). The *Johnson* court found that since compensatory and punitive damages are the type of damages that individuals are able to provide, the basis

for these presumptions no longer existed. *Id.* at 983. "Thus it could be argued that the 1991 amendments open the door for individual liability." *Id.*

The fault in this reasoning is that the 1991 amendments by Congress expanded only the types of remedies available and not the statutory definition of employer. "If Congress did not intend to allow recoveries against individual employees under Title VII before the passage of the 1991 Act, then it did not intend to create individual employee liability merely by providing for additional remedies." *Lowry*, 843 F.Supp. at 231.

The nature of the changes brought about by the 1991 amendments further suggests that individual liability for agents was not intended by Congress. Congress specifically provided a sliding scale of maximum liability for compensatory and punitive damages against employers based on the number of employees. 42 U.S.C.A. § 1981a(b)(3) (West 1994). Yet there was no mention of any maximum liability for individuals. "We think that if Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included individuals in this litany of limitations, and would have discontinued the exemption for small employers." *Miller* at 588 n. 2.

Lastly, the *Johnson* court found that imposing individual liability upon employee agents was necessary because "it is clear [that] the exclusion of individual liability for a co-worker supervisor can subvert the stated purpose of Title VII," i.e., to combat discrimination in the workplace and to compensate victims of discrimination. *Id.* at 985, 986. This reasoning assumes that supervisors and managers would discriminate freely and with impunity unless they were personally liable under Title VII. As *Miller* states, such a conclusion is unsound:

> No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation. An employer that has incurred civil damages because one of its employees believes he can violate Title VII with impuni-

ty will quickly correct that employee's erroneous belief.

*Miller,* 991 F.2d at 588.

III. Conclusion

This court finds *Lowry* and *Miller* to be persuasive. The statutory scheme, taken as a whole, indicates that individual agent liability was not intended by Congress. Rather, agent "official" liability was intended in order to hold employers responsible for these discriminatory acts. The 1991 amendments reveal no intent by Congress to expand liability to include agents in their individual capacity. The most persuasive argument for this conclusion is the continuation of the express exclusion for small employers and the absence of any mention of individual agent liability limits on the sliding scale for compensatory and punitive damages. 42 U.S.C.A. § 2000e(b), 42 U.S.C.A. § 1981a(b)(3) (West 1994). Absent such congressional intent to include individual liability, a reinterpretation of the Title VII definition of "employer" finding such liability is unjustified. The purpose of the Act is properly fulfilled by holding employers ultimately responsible for the discriminatory acts of their employees and agents.

In addition, although the Sixth Circuit has yet to directly address the issue, the majority of district courts within the Sixth Circuit addressing the issue have found no individual agent liability. *Lowry v. Clark; Bremiller v. Cleveland Psychiatric Inst.; Wilson v. Wayne County. Contra Johnson v. University Surgical Group.* Also, the weight of authority among the various district and circuit courts considering this issue is in agreement with *Lowry* in not imposing individual agent liability under Title VII. *Miller; Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994), *cert. denied* — U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir. 1993); *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991) (per curiam). *See also Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.1994), *cert. denied* — U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994) (no individual liability for agents under ADA).

Therefore this court adopts the holding in *Lowry* and finds that the "agent" provision within the employer definition of Title VII only ensures that employers cannot escape liability and does not attach individual liability to the employee supervisors themselves.

An appropriate order shall issue.

## ORDER

Defendant Eddie Williams, having filed a motion to dismiss from the Title VII claim in this action (docket 5), and the court being sufficiently advised,

IT IS ORDERED: the motion to dismiss Defendant Williams from the Title VII cause of action in this complaint is GRANTED. Defendant Williams remains a party as to the state claim of intentional infliction of emotional distress.