**Brenda S. STUMP, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**Civil Action No. 95–9.**

United States District Court,
E.D. Kentucky.

Sept. 24, 1996.

Herbert Deskins, Jr., Pikeville, KY, for plaintiff.

Brian C. House, Tooms & House, London, KY, for defendant.

HOOD, District Judge.

Before the Court is the motion of the defendant Wal–Mart Stores, Inc. for summary judgment. [Record No. 31]. The plaintiff Brenda S. Stump has failed to file a timely response.[1]

This motion is therefore ripe for consideration.

## FACTUAL BACKGROUND

Stump was employed as a cashier (and, at times, as a sales clerk) at Wal–Mart in Pikeville for a period of approximately ten months. On February 17, 1994, she was terminated from employment with Wal–Mart. This action arises out of that termination.

Stump's deposition reveals the following with respect to how the termination was handled. Stump was called into work and asked to go to the training room. Ronnie Spurlock, Brenda Smith, and Robert Mangold met her there. Mangold is the loss prevention manager at Wal–Mart.

This meeting, which lasted somewhere around one and one-half hours, was the culmination of an internal investigation into Stump's conduct while working at Wal–Mart. Sometime in February of 1994, Wal–Mart had received information that Stump had failed to charge a customer for $19.00 worth of merchandise. This information was passed along to Mangold who then used one of the store's surveillance cameras to watch Stump at her register. Also, Wal–Mart suspected Stump of allowing one of her sons to leave the store with a TV, an entertainment

---

1. Failure to file an opposing memorandum justifies granting the motion for summary judgment. Local Rule 6(b)(1)(A).

center, and a VCR. These items were later returned to the Wal–Mart in Morehead.

At the meeting, Stump testified she was "sitting right at the door" of the training room. Mangold introduced himself, spoke generally about loss prevention and then confronted Stump regarding her conduct at Wal–Mart. When Stump denied the allegations, he asked her to leave the store and never return. Stump testified that she refused to leave the store. Stump further testified that she was never told she could not leave, but in fact was told to leave. At some point, Mangold struck with his fist the table at which they were all seated. Stump was initially frightened by Mangold's action but testified that Mangold was showing his authority.

Wal–Mart claims that Stump was terminated because she had been "under-ringing" for an associate and on other instances. Mangold reviewed a written statement prepared by Stump and then terminated her employment. This statement denies the allegations. [Record No. 10]. In any event, the exit interview form indicates the termination was involuntary and based on "unauthorized removal of company property." [Record No. 10]. In her deposition, Stump denies the substance of this although she acknowledges her signature thereon.

## DISCUSSION

The complaint, attached to the Notice of Removal [Record No. 1], indicates that Stump pursues the following claims against Wal–Mart: wrongful discharge in violation of public policy; extreme and outrageous conduct; false imprisonment; and assault. Wal–Mart contends that the evidence shows, without question, that as a matter of law Stump is unable to succeed on any of these theories. Each claim shall be addressed in turn.

### 1. Wrongful Discharge

There is no dispute that Stump was an hourly at-will employee with Wal–Mart. The employee handbook, which Stump acknowledges she read, states: "Your employment with Wal–Mart is on an 'at-will' basis." The handbook further states that the policies and

benefits afforded by Wal–Mart are not to be construed as a contract of employment.

The law in Kentucky is clear that an at-will employee may be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. v. Meadows,* 666 S.W.2d 730, 731–31 (Ky.1984). The exceptions to this rule are set out in *Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky.1985). Even an at-will employee may not be discharged on the basis of constitutionally protected activity or public policy as established by legislative determination. The public policy must be fundamental and well-defined as evidenced by existing law and the determination of whether the public policy asserted meets these criteria is a question of law for the court. *Grzyb,* 700 S.W.2d at 401.

Having examined the complaint and the record but being without the benefit of an opposing memorandum, the Court is unable to discern what public policy Stump is claiming was violated. This burden is squarely on Stump, *Bennett v. Jones,* 851 S.W.2d 494 (Ky.Ct.App.1993), and her failure to point to any public policy whatsoever dooms her claim of wrongful discharge.

### 2. Extreme and Outrageous Conduct

Besides predicating a claim on the fact of the discharge itself, Stump also advances claims based on the **manner** in which she was discharged. Her first such claim is that she was put to a "forced and harassing interrogation."

The Court is not of the opinion that the conduct of Wal–Mart may reasonably be regarded as so extreme and outrageous as to permit recovery on this theory. *Pierce v. Commonwealth Life Ins. Co.,* 825 F.Supp. 783, 788–89 (E.D.Ky.1993) (citation omitted).

Examining the relevant Kentucky case law, it becomes clear that the conduct alleged is not extreme and outrageous. The conduct here is nowhere near that of, for example, a nurse shouting to "shut up" at a woman who was delivering her still born child, unassisted, into a bedpan, or a husband who had committed adultery spending the proceeds of

checks and other assets during divorce proceedings and then threatening his soon to be ex-wife to achieve a favorable settlement. Both of these examples have been held not to constitute outrageous conduct under Kentucky law. *Humana v. Seitz,* 796 S.W.2d 1, 3 (Ky.1990); *Whittington v. Whittington,* 766 S.W.2d 73 (Ky.Ct.App.1989).

■ The law in Kentucky is restrictive in defining what constitutes outrageous conduct. *Pierce,* 825 F.Supp. at 789. Although the climate of a meeting to discharge an employee may become uncivil, a great deal more is required to approach outrageous conduct. Incivility, without more, is not the touchstone of extreme and outrageous behavior. The record contains nothing which would support a finding of such behavior. Thus, the claim for outrageous conduct shall be dismissed.

### 3. False Imprisonment

■ In order to succeed on the claim of false imprisonment, Stump must establish that she was detained through the use of actual threats, violence, or otherwise, without her consent and against her will. *Ford Motor Credit Co. v. Gibson,* 566 S.W.2d 154, 155 (Ky.1977).

■ Stump's deposition testimony clearly establishes that she was not detained against her will. She claimed, "Never did they tell me I was not allowed to leave the room." And further, "They actually asked me to leave the room. I was not in prison. I was asked to leave the store, leave the premises." And, "he just kept trying to get me to leave the store and I wouldn't leave." [Stump Deposition, page 36–38].

In addition, any claim that Stump's consent was somehow involuntary would be unavailing. If Stump stayed in order to clear her reputation and in hopes of continuing her employment as her deposition testimony suggests, she cannot claim she was detained without her consent and against her will. *Columbia Sussex Corp. Inc. v. Hay,* 627 S.W.2d 270 (Ky.Ct.App.1982). Therefore, her claim of false imprisonment must be dismissed.

### 4. Assault

■ Without some other acts and circumstances which would create a reasonable apprehension of harmful or offensive contact "forced and harassing interrogation" will not support the tort of assault. Restatement (Second) of Torts § 31; *Noble v. Louisville Taxicab & Transfer Co.,* 255 S.W.2d 493 (Ky.1953). Words alone will not suffice.

■ The only act alleged was Mangold striking the table with his fist and telling Stump to admit her guilt. Stump's reaction was, "And I sort of got afraid of the man a little bit there at first," and then she concludes, "he was showing his authority." [Stump Deposition, page 37]. Based on the circumstances, it does not appear that Mangold was intending to strike Stump but missed and hit the table instead. Nor does it appear that Mangold was intending to make Stump believe that he was going to strike her. Quite simply, on these facts, there could have been no imminent apprehension of a harmful or offensive contact. An apprehension of future contact will not suffice. Therefore, the claim of assault must be dismissed.

### CONCLUSION

■ Based on the evidence as contained in the depositions and the record, the Court is persuaded that there are no genuine issues of material fact which would necessitate the trial of this matter to a jury. With respect to the fact of termination, Stump must deal with the fact that she was an at-will employee and she has cited no public policy which was abridged in her termination. Even accepting Mangold's accusations as false, no claim for wrongful discharge can succeed. Just as an at-will employee may quit so an at-will employee may be terminated; such a legal relationship endures only so long as the parties desire.

As to the termination hearing itself, Stump has not alleged conduct which would, as a matter of law, constitute extreme and outrageous conduct under the restrictive view of such conduct as defined by Kentucky law. She specifically stated that she was never told she could not leave and that, in fact, she

was told to leave the room and the premises. This conclusively shows that Stump was not held at the meeting against her will and without her consent. Finally, no facts exist which would support the assault claim.

Accordingly,

**IT IS ORDERED:**

(1) That the motion of the defendant Wal–Mart Stores, Inc. for summary judgment [Record No. 31] be, and the same hereby is, **GRANTED;**

(2) That this matter be, and the same hereby is, **DISMISSED WITH PREJUDICE and STRICKEN FROM THE ACTIVE DOCKET.**