**Patricia A. EFFINGER, Plaintiff,**

v.

**PHILIP MORRIS, INCORPORATED,
d/b/a Philip Morris, USA; LaMont Collins; and Ron Leach, Defendants.**

**No. CIV. A. 3:97CV-130-J.**

United States District Court,
W.D. Kentucky,
Louisville Division.

June 4, 1997.

---

## MEMORANDUM OPINION

JOHNSTONE, Senior District Judge.

Patricia Effinger, plaintiff, brought this sexual harassment suit against named defendants. In her complaint, Effinger alleged that Philip Morris, Lamont Collins, and Ron Leach sexually harassed, discriminated, and retaliated against her in violation of the Kentucky Civil Rights Act, K.R.S. Chapter 344. She further maintained that defendants engaged in conduct which constituted the state tort claim of outrage. Philip Morris removed the action to this court based on diversity jurisdiction, 28 U.S.C. § 1332(a). Several motions are pending for the court's consideration including: (1) a motion by Ron Leach for summary judgment (Docket No. 3); a motion by Lamont Collins for summary judgment (Docket Nos. 4 and 9); and a motion by Patricia Effinger to remand to state court (Docket No. 7). For the reasons that follow, Leach's motion for summary judgment and Collins' motion for summary judgment will be granted. Effinger's motion to remand will be denied.

## I. Background

Patricia Effinger worked at Philip Morris as an hourly employee from September 9, 1968 to November 7, 1994. After she left Philip Morris, Effinger applied for and was granted a short term medical leave of absence. From November, 1994 until June 2, 1995, Effinger received temporary disability benefits. On July 1, 1995, Effinger was granted Social Security Disability benefits due to a mental/emotional disability. Because she qualified for Social Security Disability benefits, she was entitled to long-term disability leave from Philip Morris as well. Effinger is currently receiving long-term disability leave and Social Security Disability benefits due to her mental/emotional disability.

While an employee with Philip Morris, Effinger was assigned to floor 4–10 from February 8, 1988 until November 8, 1988. During this time, Leach was the Group Supervisor for floor 4–10. As the Group Supervisor, Leach was one level removed from Effinger. In other words, he supervised Effinger's direct supervisor. In her complaint, Effinger stated Leach sexually harassed her and engaged in conduct arising to the tort of outrage while she was assigned to floor 4–10.[1]

Specifically, in her deposition, Effinger testified that Leach

cussed me out every day, nothing I did right. I could not do anything right for that man. He would have his supervisors take me into the office. After I got in there, they really didn't have a reason. I kept asking, "what have I done wrong?" ... He would make up stuff every day. I couldn't do nothing right. I couldn't please him.

(Effinger depo. p. 83). Further, in a verified answer to defendants' interrogatory number 2, Effinger stated that "[w]hen I worked at Philip Morris my boss, Ron Leach, would continually berate me and attempt to make my life miserable.... I cannot recall specific dates and times for this ongoing conduct but it was extremely upsetting and humiliat-

---

1. However, in her deposition, Effinger stated that she is not alleging a claim of sexual harassment against Leach and that none of Leach's conduct was of a sexual nature or sexually inappropriate. (Effinger depo., p. 95).

ing and uncalled for." (Effinger's answer to Int., Int. No. 2). Finally, Effinger stated in her deposition that the alleged conduct by Leach which forms the basis of her claims occurred while she was assigned to floor 4–10 at Philip Morris.

It is undisputed that on November 8, 1988, she was assigned to another floor. After Effinger was transferred from floor 4–10, it appears that her contact with Leach ceased. She further testified in her deposition that she did not leave work due to Leach's conduct. (Effinger depo., pp. 163–64).

Effinger also claimed that Lamont Collins sexually harassed her and engaged in conduct creating a cause of action for the tort of outrage. In her deposition, Effinger stated that Collins would state that if he could get his "hands on your [Effinger's adult] daughter, I'm going to oomph" and then he made several pelvic thrusts. (Effinger depo., p. 98). She admitted that on at least one occasion, she responded to Collins' comment, "in a laughing tone," by telling him that her daughter "wasn't his type." (Effinger depo., pp. 102–05). Effinger did not tell Collins that she found his comments offensive until the last time he allegedly made them, at which time Collins stopped. Effinger also stated that she was offended because she believed that Collins "thought" she was a lesbian. She based this assumption on the fact that Collins asked her if she knew whether another female employee was a lesbian. (Effinger depo., pp. 96–98).

On October 18, 1996, Effinger filed suit in Jefferson Circuit Court. Defendants timely answered and discovery proceeded. After taking Effinger's deposition on February 12, 1997, defendants believed that two of the defendants may have been fraudulently joined and that the case was removable. On March 7, 1997, Philip Morris removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a).

## II. Analysis

### A. Lamont Collins

■ The Kentucky Civil Rights Act, K.R.S. Chapter 344, prohibits employers from discriminating against any individual on the basis of sex. Under the Kentucky Civil Rights Act, an "employer" is defined as "a person ... who has eight (8) or more employees ... and an agent of such person." K.R.S. § 344.030(2). The Kentucky Civil Rights Act is modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *See Palmer v. International Association of Machinists and Aerospace Workers,* 882 S.W.2d 117, 119 (Ky.1994). A stated purpose of the Kentucky Act is "[t]o provide for execution within the state of policies embodied in the Federal Civil Rights Act of 1964" and other federal civil rights legislation. K.R.S. § 344.020(1)(a). Because Title VII and the Kentucky Civil Rights Act are "virtually identical," federal decisions interpreting the federal act are "most persuasive, if not controlling, in interpreting the Kentucky statute." *White v. Rainbo Baking Co.,* 765 S.W.2d 26, 28 (Ky.App.1988) (quoting *Kentucky Commission on Human Rights v. Commonwealth,* 586 S.W.2d 270, 271 (Ky. App.1979)).

■ In *Winston v. Hardee's Food Systems, Inc.,* 903 F.Supp. 1151 (W.D.Ky.1995), this court addressed the issue of whether an employee's agent could be separately liable as an "employer" under Title VII. In other words, the *Winston* Court addressed the issue of whether an individual could be held liable in his or her personal capacity under Title VII for unlawful discrimination. Answering this question in the negative, the *Winston* Court reasoned:

> The statutory scheme, taken as a whole, indicates that individual agent liability was not intended by Congress. Rather, agent "official" liability was intended in order to hold employers responsible for these discriminatory acts. The 1991 amendments reveal no intent by Congress to expand liability to include agents in their individual capacity. The most persuasive argument for this conclusion is the continuation of the express exclusion for small employers and the absence of any mention of individual agent liability limits on the sliding scale for compensatory and punitive damages. 42 U.S.C. § 2000e(b), 42 U.S.C.A. § 1981a(b)(3) (West 1994). Absent such congressional intent to include

individual liability, a reinterpretation of Title VII definition of "employer" finding such liability is unjustified. The purpose of the Act is properly fulfilled by holding employers ultimately responsible for the discriminatory acts of their employees and agents.

*Winston,* 903 F.Supp. at 1155. Although the Sixth Circuit has not specifically addressed this issue, the majority of district and circuit courts addressing the issue have found no individual agent liability. *See e.g. Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994), *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993); *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991) (per curium); *Bremiller v. Cleveland Psychiatric Institute,* 879 F.Supp. 782 (N.D.Ohio 1995); *Wilson v. Wayne County,* 856 F.Supp. 1254 (M.D.Tenn.1994); *Lowry v. Clark,* 843 F.Supp. 228 (E.D.Ky.1994); *contra Kramer v. Windsor Park Nursing Home, Inc.* 943 F.Supp. 844, 849–50 (S.D.Ohio 1996); *Johnson v. University Surgical Group,* 871 F.Supp. 979 (S.D.Ohio 1994); *Lamirande v. Resolution Trust Corp.,* 834 F.Supp. 526, 527–29 (D.N.H.1993).

Moreover, the Kentucky Supreme Court has implicitly addressed the issue of whether an employee's agent can be individually liable as an employer under the Kentucky Civil Rights Act. In *Palmer v. International Association of Machinists and Aerospace Workers,* 882 S.W.2d 117 (Ky.1994), the Supreme Court of Kentucky found that two individuals could not be liable for discrimination because they did not qualify as employers as defined in K.R.S. § 344.030(2). *Id.* at 120. Under the finding, the *Palmer* Court granted summary judgment in favor of the two individuals on the claim of unlawful discrimination. *Id.*

■ The court finds that under the Kentucky Civil Rights Act, discriminatory actions by individuals acting in their official capacities as agents of their employer do not create individual liability. Rather, similar to Title VII, the Kentucky Act "is properly fulfilled by holding employers ultimately responsible for the discriminatory acts of their employees and agents." *Winston,* 903 F.Supp. at 1155. Under the teachings of *Palmer* and *Winston,* Collins does not qualify as an "employer" pursuant to the definition of K.R.S. § 344.040. Accordingly, Collins' motion for summary judgment will be granted. *See Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 603 (6th Cir.1988).

■ Effinger also alleged that Collins engaged in conduct giving rise to the state tort or outrage. To state a cause of action for the tort of outrage under Kentucky law, a plaintiff must show: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 2–3 (Ky.1990). In *Seitz,* the Kentucky Supreme Court explained:

> It has not been enough that the defendant has acted with an intent which is tortious . . ., or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Seitz,* 796 S.W.2d at 3 (quoting Restatement (Second) of Torts, § 46, comment d). *See Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 805–06 (6th Cir.1994); *Stump v. Wal–Mart Stores, Inc.,* 942 F.Supp. 347, 349 (E.D.Ky.1996); *Whittington v. Whittington,* 766 S.W.2d 73 (Ky.App.1989); *but see Kroger Co. v. Willgruber,* 920 S.W.2d 61 (Ky.1996).

■ Here, Effinger maintained that Collins made sexual gestures while stating that he would like to "get his hands on" her daughter. He made these remarks three or

four times over the course of two years. However, once she told him that this offended her, he stopped. She also stated that she believed Collins thought she was a lesbian. However, Effinger admitted that he never called her a lesbian—she merely assumed that he thought she was one. Collins' conduct is not the type of intentional conduct encompassed in the tort of outrage. Assuming that Effinger's assertions are true, Collins' conduct is inappropriate for a workplace setting. However, it is not the type of intentional conduct that gives rise to the level of "extreme and outrageous" as outlined in *Seitz, Stump, Pierce,* and *Whittington.* Collins' motion for summary judgment will be granted on this claim as well.

### B. Ron Leach

The five-year statute of limitation outlined in K.R.S. § 413.120 applies to both Effinger's claim of the tort of outrage, *Craft v. Rice,* 671 S.W.2d 247, 251 (Ky.1984), and to her claim of sexual harassment, *Clifton v. Midway College,* 702 S.W.2d 835, 837 (Ky.1985). Here, Effinger maintained that Leach sexually harassed her and engaged in conduct giving rise to the tort of outrage between February 8, 1988 until November 8, 1988. However, both of these claims fall outside of their respective five-year statute of limitations. Accordingly, Effinger's claims against Leach are time-barred by the five year statute of limitations and her claims against Leach will be dismissed. In addition, for the reasons outlined above, Leach cannot be held liable in his personal capacity for alleged violations of the Kentucky Civil Rights Act.

### C. Removal of Action

In her motion to remand, Effinger argued that Philip Morris failed to timely remove the present suit from Jefferson Circuit Court to this court. As provided in 28 U.S.C. § 1446(b):

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant ... of a copy of the initial pleading setting forth the claim for relief ... or ... the service of summons.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

In removing the action to this court, Philip Morris stated that its Notice of Removal was

> being filed within thirty days after receipt by the removing party of an "other paper" within the meaning of 28 U.S.C. § 1446(b) from which it could be first ascertained that this case is one which is removable. As set out below, Philip Morris could first ascertain that this action [was] removable on the date the Plaintiff's deposition was commenced, February 12, 1997.

Effinger argued that Effinger's deposition was not "other paper" within the meaning of 28 U.S.C. § 1446(b), and thus, defendants' notice of removal was untimely filed.

However, Effinger's reasoning is misplaced. The majority of courts have held that a discovery deposition constitutes a "other paper" within the meaning of 28 U.S.C. § 1446(b). *See· e.g. Riggs v. Continental Baking Co.,* 678 F.Supp. 236, 238 (N.D.Cal.1988); *Smith v. Int'l Harvester Co.,* 621 F.Supp. 1005, 1007 (D.Nev.1985); *Brooks v. Solomon Co.,* 542 F.Supp. 1229, 1230 (N.D.Ala.1982); *Fisher v. United Airlines, Inc.,* 218 F.Supp. 223 (S.D.N.Y.1963); *Fuqua v. Gulf, Colorado and Sante Fe Ry. Co.,* 206 F.Supp. 814, 816 (E.D.Ok.1962); *Gilardi v. Atchison, T. & S.F.R. Co.,* 189 F.Supp. 82 (N.D.Ill.1960); *contra Campos v. Housland, Inc.,* 824 F.Supp. 100, 102 (S.D.Tex.1993). In other words, the second paragraph of 28 U.S.C. § 1446(b) "affords the defendant an opportunity to acquire the information establishing the jurisdiction of the federal court and, ultimately, the removability of a case, through various devices such as deposition." *Zawacki v. Penpac, Inc.,* 745 F.Supp. 1044, 1047 (M.D.Pa.1990).

In the present suit, Philip Morris could first ascertain that this action was removable on the date that Effinger's deposition was taken, February 12, 1997. Within thirty days of her deposition, Philip Morris filed the notice of removal. Because Effinger's deposition was an "other paper" within the meaning of 28 U.S.C. § 1446(b), Philip Morris' notice of removal was timely filed.

In addition to arguing that defendants' notice of removal was untimely, Effinger also contended that Lamont Collins and Ron Leach are properly before the court which would defeat diversity jurisdiction. However, for the reasons already stated, the court finds that Collins and Leach are not properly before the court and they will be dismissed in an accompanying order. Accordingly, diversity jurisdiction exists.

### III. Conclusion

For the reasons stated, the motions for summary judgment filed by Lamont Collins and Ron Leach will be granted. Patricia Effinger's motion to remand the suit to the Jefferson Circuit Court will be denied. An appropriate order accompanies this memorandum opinion.