Eric TAPP, Plaintiff,

v.

David BANKS, et al., Defendants.

Civil Action No. 98–180.

United States District Court,
E.D. Kentucky.

Oct. 21, 1999.

David W. Thomas, Nicholasville, KY, Edward E. Dove, Robert T. Gallagher, Lexington, KY, for Eric Tapp.

Jerry W. Slone, P.S.C., Hindman, KY, Lexington, KY, for David L. Banks.

Elizabeth D. Baker, Kentucky State Police Legal Office, Frankfort, KY, for Danny Webb, Gary Rose.

Randall S. May, Barrett, Haynes, May, Carter & Roark, P.S.C., Hazard, KY, for Sherman Neace, Mack Feltner, Denny Ray Noble, Freddie Combs, Johny Blair, Sherman Neace, Mack Feltner, Denny Ray Noble, Freddie Combs, Johny Blair.

David A. Franklin, Lexington, KY, for Courtney Longacre.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on motions for summary judgment filed by the defendants [Record Nos. 24, 28, and 31]. Plaintiff has responded [Record No. 37] to which all defendants with the exception of David Banks have replied [Record Nos. 39 and 41]. This matter is now ripe for decision. The Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

In the above-styled action, Plaintiff asserts violations of his civil rights including those which are provided under 42 U.S.C. §§ 1983 and 1985, the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and various state law claims. In the early morning hours of April 20, 1997, Plaintiff stopped his vehicle at a convenience store in Prestonsburg, Kentucky, and informed two city police officers located at same that he had left Central Kentucky because it was being depopulated, and about 300,000 people were missing. Plaintiff shouted to said officers that the officers should do something as "they had already took over Lexington and Louisville and they're coming this way." Plaintiff was asked to wait, however he drove away. The Prestonsburg officers followed.[1]

---

1. The Prestonsburg officers believed that Plaintiff was either intoxicated or mentally ill.

The pursuit began on Kentucky Highway 80. At 3:17 a.m. Kentucky State Police Post 9 in Pikeville requested assistance from Post 13 in Hazard, whereupon Trooper David Banks was dispatched to assist the other officers. With speeds reaching an estimated 80 to 100 miles per hour through dense fog, Plaintiff led law enforcement officers on a 40 minute pursuit covering three counties and approximately fifty miles. This included Plaintiff driving through a rolling road block and road block flares, and using both sides of the highway to maintain control of his vehicle when taking curves at a high rate of speed.

The pursuit ended near 3:50 a.m. at the Perry–Breathitt County lines when Plaintiff stopped and exited his vehicle. Defendant Banks, who eventually led the pursuit, began approaching Plaintiff when Plaintiff allegedly charged toward Defendant Banks in a threatening manner. Defendant Banks then struck Plaintiff with his flashlight. Said defendant alleges that he attempted to strike Plaintiff on the shoulder, but due to Plaintiff's erratic actions, the blow landed on Plaintiff's head. Plaintiff then fell to the ground.

Plaintiff allegedly continued to threaten Defendant Banks by attempting to kick him while said defendant tried to arrest Plaintiff. Defendant Banks then struck at Plaintiff's legs, landing several blows to his left knee and other areas of his body. Defendant Banks was only able to subdue Plaintiff with the assistance of Trooper Courtney Longacre.[2]

After Plaintiff was placed in Defendant Banks's cruiser, he was taken to Appalachian Regional Hospital for examination. Plaintiff requested that the hospital examine his knee, but states that the hospital refused to do so. Plaintiff was treated and released from the hospital, whereupon he was taken to the Perry County Jail for booking.[3]

Plaintiff remained at the jail for approximately twenty days prior to being transferred to Eastern State Hospital whereupon he was diagnosed with bi-polar disorder. It was later discovered that Plaintiff had a broken patella. Plaintiff underwent surgery on same at the University of Kentucky Medical Center. On April 10, 1998, Plaintiff filed the instant action.

## CONCLUSIONS OF LAW

### I. Applicable standard

Under Fed.R.Evid. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [his] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997).

The Court reviews below, the plaintiff's claims against each of the defendants as discussed in their respective motions for summary judgment.

### II. Defendant David Banks

█ The Eleventh Amendment of the United States Constitution, precludes any suit against Defendant Banks in his official capacity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Hence, the discussion of all claims pertain-

---

2. Trooper Longacre was a former defendant in this action, and has now been voluntarily dismissed by the plaintiff.

3. Plaintiff received six sutures in the top of his head. He received no other basic treatment from the hospital.

ing to this defendant apply only to his individual capacity.

### A. Claims under 42 U.S.C. § 1983

■ To state a viable § 1983 claim, the plaintiff must allege: 1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and 2) that the deprivation was caused by a person while acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Absent either element, a claim will fail.

■ In order for Plaintiff to succeed in his claims presented before this Court, Plaintiff must show that Defendant Banks "actively participated in the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997). In general, government officials performing discretionary functions are shielded from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 429. The threshold inquiry for the Court is whether or not "a constitutional or statutory violation has occurred at all." *Id.* This Court will use the standard of objective reasonableness in determining if the "official knew or reasonably should have known that his or her particular conduct would not pass scrutiny when applied to the law." *Sandul v. Larion*, 119 F.3d 1250, 1254 (6th Cir.1997) (internal cites omitted).

■ The reasonableness standard governing excessive force claims provides for a balance between the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests at stake." *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997) (internal cites omitted). Rather than use hindsight to guide the Court in what is reasonable, this determination must be made from "the perspective of a reasonable officer on the scene." *Id.* at 1312.

In applying the aforementioned standards to the case at bar, the Court will determine whether Defendant Banks is entitled to the affirmative defense of qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court will evaluate whether Defendant Banks knew or reasonably should have known that his alleged actions of striking the plaintiff with his flashlight violated Plaintiff's constitutional rights. The Court will make this determination from the perspective of a reasonable officer faced with the circumstances that existed in the early morning hours of April 20, 1997.

■ In making this determination the Court will "avoid substituting [its] personal notions of proper police procedure for the instantaneous decision of the officer at the scene." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir.1992). What appears reasonable to someone analyzing the circumstances at his or her leisure, "may seem quite different to someone facing a possible assailant...." *Id.*

■ In the early foggy morning of April 20, 1997, Defendant Banks had just concluded a fifty mile pursuit of Plaintiff at speeds of over 80 miles per hour. During this pursuit, Plaintiff used his vehicle to strike a police cruiser, almost causing an accident. Plaintiff had also driven through a rolling roadblock and through flares placed on an exit ramp to prevent Plaintiff from entering Kentucky Highway 15. Due to the thick fog, both the lights and sirens of the defendant's cruiser were running, making it difficult to hear. While Defendant Banks was approaching him on foot, Plaintiff exited his vehicle and began flailing his arms erratically. Plaintiff continued to fight his arrest even after he was placed on the ground.

The Court determines that Defendant Banks's actions pass scrutiny under the appropriate legal standards. Although Plaintiff was injured during his arrest, the Court holds that the actions taken by De-

fendant Banks cannot be classified as excessive force in light of the chaos that had just ensued. A reasonable officer at the scene on April 20, 1997 may have reacted in the same manner as Defendant Banks. Thus, Plaintiff's § 1983 claim must fail. Defendant Banks is entitled to qualified immunity under the principles set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### B. Claim under 42 U.S.C. § 1985

Plaintiff alleges that there was some type of conspiracy to violate Plaintiff's civil rights between Defendant Banks and the other officers. No shred of evidence exists supporting this claim. Thus, summary judgment is proper under Fed.R.Civ.P. 56.

### C. Claim under the First Amendment

■ Plaintiff's claim that he has the right to shout his depopulation statements and rapidly drive away from the police without being pursued is ludicrous. At the time the Prestonsburg police officers began the pursuit which Defendant Banks later joined, they were uncertain if Plaintiff was intoxicated or mentally ill. Consequently, Plaintiff's free speech claim is summarily rejected.

### D. Claim under K.R.S. 503.090

K.R.S. 503.090 governs the use of physical force by law enforcement officers. It provides that physical force is justifiable if the arresting officer:

(a) Believes that such force is necessary to effect the arrest;

(b) Makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and

(c) Believes the arrest to be lawful.

K.R.S. 503.090(1)

■ In light of the events that led to Plaintiff's arrest and the manner in which Plaintiff exited his vehicle and approached Defendant Banks, the Court concludes that force was necessary to effectuate Plaintiff's arrest. The purpose of the arrest was clear to Plaintiff, and the arrest was lawful as probable cause existed. All other requirements of K.R.S. 503.090 being met, the Court finds that Plaintiff has failed to present a merited claim under said statute.

### E. Claims of unlawful imprisonment and malicious prosecution

■ In light of the fact that probable cause to arrest Plaintiff existed, his claims of unlawful imprisonment and malicious prosecution must fail as a matter of law, as Plaintiff is unable to establish a prima facie case for same. *See Raine v. Drasin,* 621 S.W.2d 895, 899 (Ky.1981).

### F. Claim for the tort of outrage

■ This Court has found that Kentucky law is restrictive in its definition of outrageous conduct. *See Stump v. Wal-Mart,* 942 F.Supp. 347, 350 (E.D.Ky.1996). In instances where a plaintiff has asserted claims of assault or battery, the tort of outrage is improper, as said tort was intended to function as a supplemental form of recovery where traditional common law actions fail to provide a remedy. *See Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 299 (Ky.Ct.App.1993).

Although the Court has above stated that Plaintiff's claims of battery against Defendant Banks pursuant to K.R.S. 503.090 must fail, the Court finds that this instance is not one in which Kentucky law intends Plaintiff to use the tort of outrage as a "gap-filler," and thus enable him to proceed with this type of claim. *See id.* In the case at bar, it is not traditional common law that fails to provide Plaintiff a remedy, but rather the facts as stated by the plaintiff fail to support a claim of damages under common law theories of assault and battery. Had Plaintiff been unable to assert damages under a traditional theory of recovery, then the tort of outrage would have been appropriate. As it stands, the

tort of outrage was not intended to be used to address the claims asserted by the plaintiff. Thus, summary judgment on same is proper.

### G. Claims under the Kentucky Constitution

Plaintiff states that Defendant Banks violated his right to be free from arbitrary conduct as provided in §§ 1 and 2 of the Kentucky Constitution. A review of the fact presented by the plaintiff reveal that Defendant Banks in no way violated Plaintiff's rights as set forth by the Kentucky Constitution, and all claims asserted under same must fail.

### H. Summary of the claims against Defendant Banks

The Court finds that all claims asserted against Defendant Banks in his individual capacity must also fail for the reasons stated herein. The defense of qualified immunity is applicable to the facts at bar, and Defendant Banks is entitled to summary judgment on all counts in Plaintiff's complaint.

### III. Defendants Danny Webb and Gary Rose

Plaintiff has asserted the same claims as stated above against Defendants Webb and Rose on the grounds that improper policies existed within the Kentucky State Police in handling Plaintiff's situation, and that they failed to properly train Defendant Banks.[4] Plaintiff concedes in his response to said defendants' motion for summary judgment that sovereign immunity under the Eleventh Amendment precludes suit against Defendant Rose in his official capacity. As commissioner, Defendant Rose is acting as a state agent, and is therefore protected from any award of damages against him in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. at 100–02, 104 S.Ct. 900.

The Court considers this concession regarding official capacity applicable to Defendant Webb, as well.

Thus, it is only necessary for the Court to consider Plaintiff's claims against said defendants in their individual capacities.

Plaintiff states that as the individual solely responsible for the training of Kentucky State Troopers, Defendant Rose is liable for failing to implement the proper policy in handling situations involving emotionally disturbed individuals. Where failure to establish the proper policy in said circumstances results in a "deliberate indifference" to one's civil rights, the individual or entity responsible for the policy may be liable under 42 U.S.C. § 1983. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). This means that Defendant Rose is liable only if the policy instated by him was "the moving force [behind] the constitutional violation." *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On the other hand, Defendant Webb is liable for any civil rights violation caused by Defendant Banks if Defendant Webb "encouraged the specific incident of misconduct or in some other way directly participated in it." *Searcy v. City of Dayton,* 38 F.3d 282, 287 (6th Cir.1994) (internal quotes omitted).

The Court finds it unnecessary to delve into the policies set forth by the Kentucky State Police as it has already determined that Defendant Banks did not use excessive force on the morning of Plaintiff's arrest. Thus, Defendant Rose is absolved from liability in this action. As there was no misconduct by Defendant Banks, Defendant Webb cannot be held liable for the damages alleged by Plaintiff. For the reasons set forth in Part II of this Memorandum Opinion and Order, Defendants Webb and Rose are entitled to qualified immuni-

---

**4.** Defendant Webb is the captain of Kentucky State Police Post 13, at which Defendant Banks is assigned. At the time this action was filed, Defendant Webb was serving as Commissioner of the Kentucky State Police.

ty, and all claims against them in their individual capacities must fail.

## IV. Defendant Perry County Jail, Sherman Neace, Mac Feltner, Denny Ray Noble, Freddy Combs, and Johnny Blair[5]

All claims against the defendants in Part IV of the Court's Memorandum Opinion and Order involve allegations of cruel and unusual punishment in violation of Plaintiff's rights under the Eighth Amendment. Plaintiff states that after he was taken to the Perry County Jail, he was not given the medical treatment he needed. Specifically, Plaintiff states that he remained in the jail for almost twenty days with a broken patella.

A prisoner is entitled to adequate medical care, and any deliberate indifference to his medical needs constitutes deprivation of his constitutional rights. *See Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This includes "intentionally denying or delaying access or medical care...." *Id.* at 104–05, 97 S.Ct. 285. Every claim of inadequate medical treatment by a prisoner, even when physical anguish occurred, does not constitute a violation of the Eighth Amendment. *See id.* at 105, 97 S.Ct. 285. Rather, the prisoner must show that a defendant acted with deliberate indifference by knowing of and disregarding an "excessive risk to the inmate's health...." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*

The record indicates that after Plaintiff's arrest, he was taken to Appalachian Regional Hospital in Hazard for examination. Plaintiff states that the hospital refused to examine his knee, and that it was negligent in doing so. During his stay at the Perry County Jail, Plaintiff states that he told the officials there that he was in pain. Plaintiff also states that he had trouble walking and was given a crutch to assist him in doing so. However, when asked whether he informed anyone at the jail that he needed medical attention, he always answered in the negative.

The defendants at the Perry County Jail relied on the diagnosis by the Appalachian Regional Hospital that Plaintiff did not have a serious knee injury. In light of Plaintiff's need for surgery, the hospital was obviously wrong. It appears that the plaintiff is attempting to hold the jail responsible for what appears to be the negligence of the hospital in detecting his knee injury. Assigning liability on the part of the defendants requires the Court to find that medical treatment should have been provided to the plaintiff despite the lack of diagnosis by the hospital and the absence of Plaintiff's request to see a physician. Such a finding by the Court requires second guessing of medical judgment, which federal courts have been reluctant to do. *See Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976).

The Court finds that the defendants did not act with deliberate indifference in failing to detect and provide treatment of Plaintiff's knee injury. In viewing the facts most favorable to the plaintiff, the Court concludes that the defendants are entitled to judgment as a matter of law.

## V. Conclusion

As the Court has previously stated, the existence of an injury does not automatically equate a constitutional violation. For the reasons stated herein, none of Plaintiff's claims present a genuine issue of material fact for the jury to consider, and summary judgment is proper under Fed. R.Civ.P. 56.

Accordingly,

---

5. At the time of the events described herein, Defendant Neace was the Perry County Judge Executive, Defendant Feltner was Perry County Jailer, and Defendants Noble, Combs, and Blair were Perry County Magistrates.

**IT IS ORDERED:**

(1) That the motion for summary judgment submitted by Defendant David Banks be, and the same hereby is, **GRANTED;**

(2) That the motion for summary judgment submitted by Defendants Danny Webb and Gary Rose be, and the same hereby is, **GRANTED;**

(3) That the motion for summary judgment submitted by Defendants Perry County Jail, Sherman Neace, Mac Feltner, Denny Ray Noble, Freddy Combs, and Johnny Blair be, and the same hereby is, **GRANTED.**